## The People on the relation of John. Whitely v. The Common Council of the City of Lansing.

*Contract: Grading: Orders: Specific fund: New assessment: Charter of Lansing: Mandamus.* Where a contract was made for grading, whereon the contractor was to be paid ninety per cent. on the engineer's estimates as the work progressed (the remainder being payable on completion and acceptance), and received orders drawing interest accordingly, payable only out of a specific fund, and the assessment made therefor was invalid:—

*Held,* That a new assessment must be made, and that the charter of Lansing contained provision therefor, which could be enforced by *mandamus.*

*Estimates: Legislative power: Vested rights: Evidence.* Whether the original estimate was conclusive or not, it was not competent for the legislature to enact a statute which should compel the contractor to be bound by a new estimate made without his assent, or to accept less money than he had actually earned. Such new estimate could in no way prejudice his rights, and would not be admissible in evidence for any purpose against him.

*Practice in supreme court.* An issue was granted to ascertain the amount of the work done, leaving the question of the conclusiveness of the first estimate to be determined on final hearing.

*Heard April 15. Decided April 22.*

Application for *mandamus.*

*D. Johnson,* for the relator.

*R. C. Dart* and *C. A. Kent,* for the respondent.

CAMPBELL, J.

Relator asks a *mandamus* to compel the assessment of a sufficient sum to pay him for what is claimed to be due under a grading contract, made by John Shine with the city of Lansing, upon which orders were issued as the work went on, and have not been fully paid, and relator owns a large amount of them.

The contract was made and the work done under a contract made in 1865, the validity of which does not appear to be disputed by either party. Under the charter of the city, as then existing, all work done was to be paid for out of a special fund to be raised for that purpose, and in cases like the present, it was provided that if upon the

completion of the work it should appear that more money had been expended in its completion than was estimated in making the assessment, a further assessment might be made to supply the deficiency. This provision is retained in the present revised charter.—See *old charter, L. 1865, p. 451,* § *19 ; new charter, L. 1869, Vol. 3, p. 1359.* And provision is also made for new assesments in lieu of invalid ones.—*L. 1869, Vol. 3,* § *27, p. 1359.*

By the terms of the contract orders were to be issued from time to time " upon the estimate of the city engineer, to within ten (10) per cent. of the amount so estimated as the work progresses, and to be issued in full when said grading shall be completed and accepted by the common council." The orders were to draw ten per cent. interest. The work was done, and the orders were issued upon those estimates, and an assessment was made, which was held invalid, so that the orders remained unpaid.

By *act No. 338 of the laws of 1869* a re-assessment was provided for to pay for this specific work, but not for the amount of these orders or estimates. It required a re-sur-survey and re-estimate of the amount of excavation, and provided for an assessment to pay at contract prices and interest for the work as fixed by the new estimate.

This new estimate was made (without the assent of the contractor), and appears to have resulted in reducing the estimate not far from one-half. The city council made provision for paying on the orders which were out, ratably, as much as this new assessment provided, leaving the remainder to be settled by legal or other adjustment. This application is made to obtain the collection of the balance by a further assessment.

As no legislation can be valid which impairs the obligation of a contract, there can be no ground for claiming that the estimate made under the laws of 1869 is of any legal force as concluding the contractor. It is authority for the new assessment, but it could not cut off the right to further payment if it before existed. Whether the

original estimates on which the orders were based were conclusive, or only presumptively correct, the last one could have no concluding force whatever.

The answer put in by the city contains no special statement of facts, but relies in general terms on the second estimate, and avers it to be correct. But it does not show how much it allowed to have been excavated, nor how far it differed from the former estimate, and we have no means of computing the difference. It is not such an answer as is sufficient to preclude relief, and from its generality it does not show that the facts averred upon the knowledge of any responsible party would prevail to overthrow relator's rights as set up in his application. It is, however, sufficient to put them in issue, as it denies them positively.

We do not think the petition defective in positiveness, inasmuch as it shows a *prima facie* case upon orders which were presumably good, until some averment should be made impeaching them. If the original estimates were conclusive, the answer would not be full enough to present any tangible issue, and the relator might, perhaps, have fixed rights that could not be overcome without some clear showing of fraud or mistake, at least.

But, while this particular question has not been so presented that we should be justified in finally disposing of it without argument, we are not, as at present advised, prepared to consider the engineer's estimates under the contract as final, and we think an issue must be framed and sent down for trial by jury, to determine the exact amount of work done under the contract, the whole amount of orders issued under it, and the difference, if any, between the sum earned and that included in such orders. The second estimate, we think, cannot be admitted in evidence upon these issues.

Upon the completion of the issues they will be sent down to the Ingham circuit for trial.

The other Justices concurred.