THE WESTERN WOODEN–WARE ASSOCIATION (A CORPORA-
TION) v. WILLIAM W. STARKEY ET AL.

*Contract—Restraint of trade—Public policy.*

A Michigan manufacturing firm sold their stock and material to
an Illinois corporation engaged in a similar business in that
state, and agreed not to engage in the business for five years
in eight specified states, including those in which the parties
resided, nor to allow the premises where they had been carry-
ing on their business to be used for that purpose, nor to sell
them for such use, without the consent of the corporation;
which agreement is held void on the ground of public policy.[1]

Appeal from Gratiot.   (Daboll, J.)   Argued October
28, 1890.   Decided December 24, 1890.

Bill to enjoin defendants from engaging in a manu-
facturing business, etc.   Complainant appeals from decree
dismissing bill.   Affirmed.   The facts are stated in the
opinion.

*Hatch & Cooley,* for complainant.

*T. W. Whitney,* for defendants.

LONG, J. The bill in this cause is filed for the purpose
of having the defendants Starkey, Ferris, and Olmsted
enjoined from engaging in the business of manufacturing
pails, tubs, and other articles of wooden-ware during the
period of five years from June 29, A. D. 1888; to enjoin
the other defendants from carrying on that business with
them; and to enjoin all the defendants from using certain
premises in the village of St. Louis, Gratiot county, for
the purpose of manufacturing tubs, pails, etc.   The bill

---

[1] See *Thompson v. Andrus,* 73 Mich. 551, for a case on this sub-
ject.

asks for an accounting touching complainant's damages, for a decree requiring the same to be paid, and there is also a prayer for general relief.

The bill shows that the complainant is a corporation organized under the laws of the state of Illinois for the purpose of carrying on the business of manufacturing, buying, and selling wooden-ware, and the materials which enter into wooden-ware; that it was engaged in the business prior to June 29, 1888; that on that date the defendants Starkey, Ferris, and Olmsted were doing business at St. Louis as partners under the name of the St. Louis Wooden-ware Company; that they were engaged in business similar to that of complainant, and owned and occupied certain premises, with a manufacturing establishment, and were possessed of a large quantity of manufactured articles, materials, tools, and other chattels used in their business; that on that date the complainant and the members of said copartnership entered into a contract, which is attached to the bill, the material parts of which will be referred to. By this contract, the firm, in consideration of $6,000, agreed to sell to the complainant their stock on hand, materials, tools, implements, and chattels. The contract contains this clause:

"And said first parties also agree not to become engaged in the manufacture of tubs and pails during the next five years in the states of Michigan, Wisconsin, Illinois, Minnesota, Iowa, Missouri, Indiana, or Ohio, or allow their property at St. Louis, Mich., to be used for that purpose, nor to sell said property to any one for that business, except by consent of said second parties; and in case any of the parties of the first part violate this agreement, they do hereby agree to pay to said second party $2,000 for damages for violating this contract."

The contract also contains certain other provisions not necessary here to be noticed. After making the contract the complainant paid the copartnership the $6,000, and

received the chattels. The defendants Starkey, Ferris, and Olmsted violated the contract, in that they are now engaged in manufacturing and selling wooden-ware in the premises in question, and, as the bill alleges, have confederated with the other defendants, Palmerton, Fowler, and Newman, to carry on the business with them, and, for the purpose of concealing their transactions, procured the defendants Palmerton, Fowler, and Newman to organize a corporation under the name of the F. G. Palmerton Wooden-ware Company, Limited, with intent to engage in said business.

The bill further charges that the defendant Starkey pretended to convey the lands in question to his son-in-law, Palmerton; that Palmerton has conveyed them to the Palmerton Wooden-ware Company, and that the business of manufacturing wooden-ware has been carried on on said premises by the Palmerton Wooden-ware Company; that the defendants Starkey and Ferris have active supervision, control, and management of said corporation, and have been making sales of their pails and tubs in all the states of Michigan, Minnesota, Wisconsin, Illinois, Iowa, Missouri, Indiana, and Ohio. The bill charges that the corporation so organized by the defendants is a mere pretense and cover procured to be organized by the defendants Starkey and Ferris; that Starkey and Ferris furnish the capital therefor; that the stock of the corporation is held for their benefit and advantage; that the breach of the contract on the part of the defendants has greatly injured and damnified the complainant.

To this bill the defendants filed a general demurrer, which the circuit judge sustained, and on March 14, 1890, entered a decree dismissing the bill. From this decree complainant appeals.

Complainant's counsel raised but three questions in this Court:

1. That the clause of the contract wherein the defendants Starkey, Ferris, and Olmsted agree not to become engaged in the manufacture of tubs, etc., during the next five years, in any of the eight states named, or permit the premises in question to be used for that purpose without the consent of the complainant, is valid.

2. That the clause of the contract which provides, "in case any of the parties of the first part violate this agreement, they do hereby agree to pay to said second party $2,000 for damages for violating this contract," does not preclude the complainant seeking relief by injunction. [1]

3. That Act No. 225, Laws of 1889 (3 How. Stat. §§ 9354j—9354p), declaring certain contracts, agreements, undertakings, and combinations unlawful, and providing punishment for those who shall enter into the same, or do any act in the furtherance thereof, has no application in this case. [2]

Counsel for complainant contend, under their first proposition, that this covenant is limited in respect to time; that it is also limited in regard to territory,—that is, to Michigan and the seven other states named; that it is a covenant embodied in the contract, by which contract the defendants Starkey, Ferris, and Olmsted sell certain property, the price being fixed at one sum both for the value of the property and for the covenant; that how much of this price is applicable to the property sold, and how much to the covenant not to engage in business, neither the contract nor the circumstances enable us to say; but that it would be presumed that, by reason of the covenant, a larger price was paid by the complainant than would be necessary merely to

---

[1] Counsel cited 2 High, Inj. § 1139; *Hardy v. Martin*, 1 Cox, 26; *Barret v. Blagrave*, 5 Ves. 555; *Watrous v. Allen*, 57 Mich. 362, 368; *Insurance Co. v. Insurance Co.*, 87 N. Y. 400; *Match Co. v. Roeber*, 106 Id. 473; *Fox v. Scard*, 33 Beav. 327.

[2] Counsel cited Const. U. S. Art. 1, § 10; *Whitely v. Lansing*, 27 Mich. 131; *Waldron v. Harring*, 28 Id. 493,—on the proposition that a law impairing the obligation of contracts cannot be passed, and *Mundy v. Monroe*, 1 Mich. 68; *Blackwood v. VanVleet*, 11 Id. 252; *Bank v. Warren*, 52 Id. 557,—that denial of a remedy is unconstitutional.

cover the value of the property sold. Counsel insist that this question has been settled decisively by this Court, and, in support of that proposition, cite *Hubbard v Miller*, 27 Mich. 15; *Beal v. Chase*, 31 Id. 490. Counsel also contend that the rule laid down in *Beal v. Chase, supra,* is approved in *Doty v. Martin,* 32 Mich. 462; *Caswell v. Gibbs,* 33 Id. 331; *Grow v. Seligman,* 47 Id. 610; *Watrous v. Allen,* 57 Id. 366.

From the view we take of this case, we need discuss but one question. The contract must be declared void on the ground of public policy. The cases cited by counsel for complainant do not sustain the doctrine they contend for here. This case does not fall within that class of cases where contracts have been upheld though the parties, by the contract, were to abstain from carrying on the same business for a particular length of time, and within a designated territory. In *Hubbard v. Miller,* 27 Mich. 15, the complainant was engaged in carrying on the business of a general retail hardware store in the city of Grand Haven, including the tubing and all necessary apparatus and tools for sinking drive-wells, and was also carrying on the business of putting down drive-wells. Two of the defendants, Miller and Decker, partners under the firm name of George W. Miller & Co., kept a like hardware store in the same city, and, like the complainant, kept on hand the tubing and other materials used in putting down such wells, and were also engaged in putting them down for those who chose to employ them. Complainant purchased the stock, tools, etc., of the defendants Miller and Decker, and paid their price, on condition that they would cease to do that kind of business, and would not keep well-drivers' tools and fixtures. The defendants violated this contract. The firm of George W. Miller & Co. was dissolved, and afterwards reorganized, with the defendant Akeley as a mem-

ber of the firm. The new firm shortly after went into business, and kept the same kind of tools and materials as complainant, and carried on the well-driving business. Defendant Decker went into business for himself, and also carried the same line of stock, and commenced putting down drive-wells. It is true that this Court, on the hearing here, granted a perpetual injunction. But Chief Justice CHRISTIANCY, who wrote the opinion in the case, said:

" Whether it [the contract] can be supported or not, depends upon matters outside of and beyond the abstract fact of the contract or the pecuniary consideration. It will depend upon the situation of the parties, the nature of their business, the interests to be protected by the restriction, its effect upon the public; in short, all the surrounding circumstances; and the weight or effect to be given to these circumstances is not to be effected by any presumption for or against the validity of the restriction. If reasonable and just, the restriction will be sustained; if not, it will be held void."

The Court construed this contract as limited to the city of Grand Haven and vicinity. It will be noticed that the circumstances surrounding that case and the situation of the parties show that the complainant purchased a business which was similar to the one which he was then carrying on, and which he continued to carry on thereafter in the same place. The public may have been as well served by this means as though the two or three firms continued the business.

In *Beal v. Chase*, 31 Mich. 490, to which the learned counsel refer as sustaining their position, it appears that Chase was the publisher of a receipt-book, and carried on the business of printing. Chase sold to Beal his printing establishment, the receipt-book and copyrights, the good-will of the business, and the right to use the name of Dr. Chase in connection with the book and business, and

agreed not to engage in the business of printing and pub-
lishing in the State of Michigan so long as Beal remained
in the printing and publishing business at Ann Arbor.
The whole business was turned over to Beal, and he was
to fulfill all contracts entered into by Dr. Chase, and was
to furnish the paper, the " Courier and Visitant," to all
subscribers, etc.   It appears that the business was to be
carried on as Chase had carried it on, and the property
purchased was devoted to the business in which it had
theretofore been used; it was not, like the present case,
closed up and taken out of the channels of business; and
the Court upheld and enforced the contract which the
parties themselves had made.

The complainant here is a corporation organized and
existing under the laws of the state of Illinois, and hav-
ing its place of business in Chicago.   It is alleged ·in the
bill that it is organized for the business of manufacturing,
buying, and selling pails, tubs, and other articles of
wooden-ware, and manufacturing, buying, and selling
staves, heading, hoops, and other materials which enter
into their manufacture, and also for the owning and
operating machinery, tools, and implements connected
with and used in the manufacture of pails, tubs, and
other articles of wooden-ware; that it is extensively
engaged in such business; and that it sells its products
in the eight great states named.   It is not alleged
by the bill that, in the making of the contract, the
complainant intended to take the business and good-
will of Starkey, Ferris, and Olmsted, and carry on the
business of manufacturing these articles in this State, but,
from the terms of the contract, it is manifest that it not
only intended to take these parties out of the manu-
facturing business, but to ship the machinery which was
used for that purpose out of the State, and close the

doors of the shops.    Complainant did not purchase the
realty.    It purchased all the machinery there in use, and
the contract shows that it was to be taken down and
placed on board the cars.    The interests of the parties
alone are not the sole considerations involved here.    It is
the duty of the Court to see that the public interests are
not in any manner jeopardized. ., The State has the wel-
fare of all its citizens in keeping, and the public interest
is the pole-star to all judicial inquiries.

Here a large manufacturing business had been estab-
lished, and presumably it gave employment to quite a
number of people.    By the contract these people are
thrown out of employment, and deprived of a livelihood,
and no other of the citizens of Michigan are called in to
take their places.    The business is no longer to be car-
ried on here, but is removed out of the State.    The
parties are not only bound by the contract, if valid, not
to manufacture here for a period of five years, but in
seven other of the states of the great north-west, teeming
with its millions of people.    If the complainant could
enforce this contract against Starkey, Ferris, and Olmsted,
and shut the doors of that shop, and prohibit their again
opening them for five years in any one of those states,
they could as well make valid and binding contracts to
shut the shop of every manufacturing institution in the
State, and in the other seven states, and compel the
parties now owning and operating them to remain out of
business for a term of years, and hold the doors of these
shops shut during such period; for the contract which
complainant seeks to enforce provides that these parties
shall not allow their property to be again used for that
purpose within the time limited, nor sell it to any one
for that business, except by consent of the complainant,
and this under a penalty of $2,000.

A somewhat similar question arose in *Wright v. Ryder,*

reported in 36 Cal. 342. There a contract had been
entered into for the purchase by the Oregon Steam Navi-
gation Company of the California Steam Navigation Com-
pany of a steam-boat called the "New World," for the
sum of $75,000, and also an agreement by the Oregon
Steam Navigation Company that the steam-boat should
not be run upon any of the routes of travel on the rivers,
bays, or waters of the state of California, for the period
of 10 years thereafter. The validity of this contract was
before the court, it being claimed that it was void on the
ground of public policy, and it was held void, the court
there saying:

"If the California Steam Navigation Company, which
now occupies our bays, rivers, and inlets with its fleet
of steam-boats, should suddenly convey them all to a
purchaser on condition that they were not to be employed
in navigating any of the waters of this state for a period
of 10 years, no one could doubt that this would operate
as a great present calamity to the public, and the con-
dition would be void as a restraint upon trade. On the
other hand, if a sloop or schooner of 50 tons burden
should be sold on a similar condition, the injury to the
public would be scarcely appreciable. In like manner, if
all the carpenters and masons in a large city should bind
themselves not to prosecute their business in this state
for a period of 10 years, it might produce great public
inconvenience; whereas, if only one carpenter or mason
should enter into a similar contract, the loss of his
services might not be felt by the public. And yet, in
the latter case, we would be bound by a long line of
adjudications in England and America to hold the con-
tract void as in restraint of trade."

In the present case, the defendants Starkey, Ferris,
and Olmsted were not only to remain out of such busi-
ness for the full time specified, but the premises which
had been used to carry on the manufacturing by them,
though not sold and conveyed under the contract, could
not be again used for such time by them or any other
party for the same business. I do not think it needs the

citation of authorities to show that contracts of this nature have frequently been condemned by the courts, and held void as unreasonable restraints of trade, and therefore void on the ground of public policy.

The decree of the court below must be affirmed, with costs.

The other Justices concurred.