(Cuyahoga County Court of Common Pleas.)

## LUFKIN RULE CO. v. XARVER FRINGELI.

*Contract in Restraint of Trade.*—A contract prohibiting one of the parties from carrying on any specific trade or business, not having any reasonable limitations as to the time or place, is void. The prohibition which extends any further than will fully protect the party for whose benefit the contract is made, in his occupation or business, is an unreasonable restraint of trade, and will render the contract void.

*Contract not to engage in certain trade.*— A contract not to engage in a certain line of trade for twenty-five years in Ohio or elsewhere in the United States, is an unreasonable and oppressive restraint of trade, and void as against public policy.

(Decided October, 1895.)

### DELLENBAUGH, J.

The petitions and affidavits in the case at bar disclose that on and prior to the 28th day of January, A. D. 1893, the defendants, Xarver Fringeli and Lucas Fringeli, were engaged in manufacturing rules, or sundry sorts, in the city of Cleveland, Ohio. On said last date named, plaintiff bought them out, paying $4,277.45 for all the property and good will of said partnership; and furthermore, in consideration of an agreement on the part of said Xarver and Lucas Fringeli "not to engage in, or be in any way, directly or indirectly, connected with the manufacturing, dealing in, or handling of, board or log rules, lumber gauges, log calipers, pencil holders, or any of the goods which the defendants were then making or dealing in, within the state of Ohio, or elsewhere within the United States, for the next ensuing twenty-five years." Said purchase-money price was to be paid in installments, the last one becoming due and payable on the 1st day of March, A. D. 1894; that all said payments were duly made by the plaintiff, as agreed; that there was a stipulation in said contract for liquidated damages, in case of breach on the part of defendants.

It is further alleged in the petition that the defendants have violated their said contract by establishing rule works in the city of Cleveland, Ohio, and that they are now manufacturing and dealing in the identical goods they agreed not to manufacture or deal in; that said defendants are not responsible, and that the plaintiff has no adequate remedy in law, except by injunction. The contract referred to in the petition shows that it was an agreement between plaintiff, and Lucas. Xarver, Franz and Charles Fringeli, and that the other defendants were not parties therein, in any manner whatsoever.

It is also alleged in the petition, that it was stipulated in said contract, that there was only a limited demand for the goods, which could easily be supplied by plaintiff, promptly, and at reasonable figures.

When the petition was filed, a restraining order was allowed upon the giving of a bond in the sum of $10,000, to continue until the further order of the court; but subsequently Andrew Fringeli and George Junglas were released from the operation of said order, so that now only the other defendants are restrained, as prayed for in said petition. Lucas, Charles, Franz and Xarver Fringeli thereupon filed their motion to dissolve said injunction as to each one of them, but all of the defendants joined in a general demurrer to the petition, upon the ground that the facts therein stated are not sufficient to constitute a cause of action. Substantially the same question is raised by both the motion to dissolve the injunction against the defendants still restrained thereby, and the demurrer to the petition. In support of said motion, the affidavits of all the defendants, except Franz Fringeli, were read at the hearing.

Now, the evidence adduced at the hearing very clearly shows that all property purchased by plaintiff, under the contract set forth in its petition, was removed by it to the city of Saginaw, in the state of Michigan; that plaintiff has no factory for the manufacture of rules, etc., in operation in the city of Cleveland, O., or any other place in the United States, except in said city of Saginaw, where all of its goods are made, and from which point all orders are filled. It furthermore appears from said affidavits that after the removal by plaintiff of the entire plant of The Fringeli Rule Company, from Cleveland to the city of Saginaw, Andrew Fringeli and George Junglas, who were not parties to said contract, under the name and style of The Cleveland Rule Company, started a new plant for the manufacture of rules, etc., at No. 272 Wellington street, in the city of Cleveland, O., which they are still engaged in running. The evidence adduced at said hearing also clearly establishes the fact, that neither one of the said co-defendants of Andrew Fringeli and George Junglas, have any interest, of any sort whatsoever, either directly or indirectly, in the plant of the Cleveland Rule Company, or the profits arising from the sale of its products; that their said co-defendants, or either of them, never, at any time, contributed, or promised to contribute, any money for the purpose of establishing the plant of the Cleveland Rule Company, nor have they, or either of them, assisted in any manner whatsoever, in the sale of its goods; that Franz and Charles Fringeli are not now, and never have been, in the employ of said The Cleveland Rule Company; that both Lucas and Xarver Fringeli have been, for many years, expert rule makers, and neither of them know any other trade or occupation of any sort, and are wholly dependent on said trade for their support, and the maintenance of their families dependent upon them; that in July, 1895, Xarver and Lucas Fringeli entered the employ of said The Cleve-

land Rule Company, as rule makers, and were paid wages at the rate of $1.75 per day, and no more; that they continued such work at the same rate of wages until restrained by the order of this court, on or about the 11th day of September, last past.

Plaintiff failed, at the hearing, to establish by a fair preponderance of the evidence, that the starting of the plant at No. 272 Wellington street, under the name of the Cleveland Rule Company, was the result of a conspiracy on the part of the said defendants, or that any one of the said defendants now have, or ever did have, any interest whatsoever in said business, or any part or portion of the profits arising therefrom, except Xarver Fringeli and George Junglas, who, alone, furnished all capital to start said business, and are the sole and exclusive owners thereof.

The defendants' objection to the petition in the case at bar is based upon the alleged illegality of their covenant "not to engage in, or be in any way, directly or indirectly, connected with the manufacturing of, dealing in, or handling of, board or log rules * * * within the state of Ohio, or elsewhere in the United States, for the next ensuing twenty-five years. Manifestly, this is a divisible covenant. Now, is the restriction covering the state of Ohio, reasonable and valid, while the other prohibition covering all territory "elsewhere in the United States" unreasonable and invalid, or are both of them in restraint of trade, and therefore illegal and void? Let us see what the law really is, if we can, in the midst of the ocean of judicial conflict of opinion, upon the question presented for our consideration in this case.

It is a well-settled rule of law in Ohio, that contracts in general restraint of trade are void; but if limited in time, and in partial restraint of trade only, they may be supported, if the restraint be reasonable, and the contract founded on a good and valuable consideration. But it also seems to be equally well settled in Ohio, that contracts in partial restraint of trade are such as operate only as to particular places and persons, as well as for a limited period of time.

In Lange v. Werk (2 Ohio St. 520), L. contracted with W. that he would not, for about three years, be connected, either directly or indirectly, with the manufacture of stearin candles in the county of Hamilton, in the state of Ohio, or at any other place in the United States, under a forfeiture of four thousand dollars, as liquidated damages. The Supreme Court, through the famous and learned Judge Ranney, who delivered the opinion, held: (1) "That all that part of the covenant which bound L. not to pursue the business * * * at any other place in the United States, was void, being in general restraint of trade; (2) That it was divisible, and if attended with other necessary requisites, might be good for Hamilton county."

The court furthermore held, in Lange v. Werk, supra, that (1) All contracts in general restraint of trade are opposed to public policy, and void; (2) All agreements in partial restraint of trade are illegal, except when founded upon a valuable consideration, and when good and sufficient reasons appear for entering into such contract. But, says Judge Ranney, "Before such a contract can be enforced, it must appear from the pleadings and the proofs (1) That the restraint is partial; (2) Founded upon a valuable consideration; (3) That the contract is reasonable, and not oppressive; (4) A declaration which does not contain the necessary covenants to show the contract reasonable, so as to rebut the presumption of law against its validity, is bad on general demurrer."

In Thomas v. Miles (3 Ohio St. 275), T. and M., partners doing business in the city of Cincinnati, entered into a dissolution agreement, in which M. covenanted that he would not, within five years thereafter, enter into, nor be concerned, in the kind of business carried on by said partners within said city of Cincinnati, or elsewhere." The Supreme Court, through Judge Ranney, who again delivered the opinion of the court, held: "That such a contract was reasonable and proper so far as it restrained Miles from engaging, for a limited time, in the city of Cincinnati in the business theretofore pursued by the firm. But so far as it attempts to prevent M. from interfering or competing with * * * T. * * * at any and all places, it is clearly opposed to public policy, and is therefore void. Such a contract is divisible, and does not constitute a breach of its legal obligations, if, within the time limited, M. should be employed at a distant point, as agent or otherwise, in the business in which the firm was engaged."

In Western Wooden Ware Association v. Starkey et al. (47 N. W. Rep. 604), the contract under consideration contained this clause: "And the said first parties also agree not to become engaged in the manufacture of tubs and pails during the next five years in the states of Michigan, Wisconsin, Illinois, Minnesota, Iowa, Missouri, Indiana and Ohio, or allow their property at St. Louis, Mich., to be used for that purpose, nor to sell said property to any one for that purpose, except by consent of said second parties; and in case any of the parties of the first part violate this agreement, they do hereby agree to pay to said second party $2,000 for damages for violating this contract." Starkey and others failed to comply with the terms of said contract, and thereupon said Wooden-Ware Co. filed their bill in equity for the purpose of having said Starkey et al. enjoined from engaging in the business of manufacturing tubs and other articles of woodenware during said period of five years; and furthermore to enjoin them from carrying on said business at St. Louis, Mich., or any other place within any one of the eight states named in said contract. Complainant, amongst other things, alleged in its bill in equity, that the said defendants conspired together, and organized a corporation, known as The Palmerter Wooden-Ware Co.,

for the purpose of conducting and carrying on precisely the same business prohibited by said contract, at said St. Louis; that said corporation so organized by the defendants is a mere pretense and cover, procured to be organized by said defendants, and that they furnished the capital therefor; that the stock of said corporation is held for their benefit and advantage; that the breach of the contract on the part of the defendants, greatly injured the plaintiff.

Defendants filed a general demurrer to said bill in equity, which the circuit judge sustained, and afterwards, on the 24th day of December, 1890, the decision of the Circuit Court was affirmed by the Supreme Court of Michigan, in an unusually well-considered case which is substantially like the case at bar. Judge Long, who delivered the opinion of the court, amongst other things, said: "It is not alleged by the bill that, in the making of the contract, the complainant intended to take the business and good will of Starkey, Ferris and Olmstead, and carry on the business of manufacturing these articles in this state; but, from the terms of the contract, it is manifest that they not only intended to take these parties out of the manufacturing business, but to ship the machinery which was used for that purpose out of the state, and close the doors of the shops. Complainant did not purchase the realty. It purchased all the machinery there in use, and the contract shows that it was to be taken down and placed on board the cars. The interests of the parties alone are not the sole consideration involved here. It is the duty of the court to see that the public interests are not in any manner jeopardized. The state has the wellfare of all its citizens in keeping, and the public interest is the pole-star to all judicial inquiries.

"Here a large manufacturing business had been established, and presumably it gave employment to quite a number of people. By the contract these people are thrown out of employment, and deprived of a livelihood, and no other of the citizens of Michigan are called in to take their places. The business is no longer to be carried on here, but is removed out of the state. The parties are not only bound by the contract, if valid, not to manufacture here for a period of five years, but in seven other of the states, of the great Northwest teeming with its millions of people. If the complainant could enforce this contract against Starkey, Ferris and Olmsted, and shut the doors of that shop, and prohibit their opening them again for five years in any one of those states they could as well make valid and binding contracts to shut the shop of every manufacturing institution in the state, and in the seven other states, and compel the parties now owning them and operating them to remain out of business for a term of years, and hold the doors of these shops shut during such period; for the contract which complainant seeks to enforce provides that these parties shall not allow their property to be again used for that purpose within the time limited, nor sell it to any one for that business, except by consent of the complainant, and this under a penalty of two hundred dollars.

In the present case, the defendants, Starkey, Ferris and Olmsted, were not only to remain out of such business for the full time specified, but the premises which had been used to carry on the manufacturing by them, though not sold and conveyed under the contract, could not be again used for such time by them or any other party for the same business. I do not think it needs the citation of authorities to show that contracts of this nature have frequently been condemned by the courts, and held void as unreasonable restraints of trade, and, therefore void on the ground of public policy."

In Peltz v. Eichele (62 Mo. 171), E., a manufacturer and dealer in matches, in the city of St. Louis, entered into a contract with P. et al., for the sale, to them, for the sum of $20,000, of his factory and stock, together with his good will, etc., in said business. This agreement, among other things, contained the following stipulations: "Said E., further covenanting, agrees that he will not enter into the manufacture of matches at this (St. Louis), or any other place, for the term of five years, nor lend his influence, skill * * * to any other party or parties so engaged, to the detriment of the business thus transferred." The court, in a well-considered opinion, held that the covenant, not to engage in the business transferred for five years, "in the city of St. Louis, or at any other place, is divisible, and as to the restrictions imposed in St. Louis, is not void, as in restraint of trade."

In Chappel v. Brockway (21 Wend. Rep. 157), B., on the 9th day of July, 1835, entered into an agreement with the Rochester & Buffalo Packet Co., that he would not, at any time hereafter, run a line of boats, or be connected in any way, with the packet boat business, on the Erie Canal. The opinion of the court was delivered by Judge Brockway, who said: "The common law will not permit individuals to oblige themselves by contract where the thing to be done or omitted is injurious to the public. Contracts in restraint of trade are, for the most part, contrary to sound policy, and are consequently held void. This is the general rule. The presumption is against all contracts in restraint of trade, and consequently it lies upon him who seeks to enforce such an obligation to show that it is free from objection. Contracts * * * that a man will not pursue his occupation or carry on business anywhere in the state, are void, upon whatever consideration they may be made. They must be injurious to the public, and no good reason can be shown why one individual should thus fetter himself, or another individual should contract for the restraint. The obligation is injurious to one party, without being beneficial to the other. But there may be good reason for allowing parties to contract for a limited restraint, as, that a man will not exercise his trade, or carry

on business in a particular place, and when such reasons are shown, the contract will be upheld and enforced." In conclusion the court holds that the agreement was valid, there being not only a sufficient consideration, but a good reason for the contract.

In Bingham et al. v. Maigne (52 N. Y. Super. Ct. Rep. 90), B. et al., manufacturers of printers' rollers, etc., purchased the business of R. & Co. One of the stipulations of the contract was, that R. & Co. should procure the defendant, one of their skilled employes, to execute, and defendant did execute to plaintiffs an agreement, containing, amongst other things, the following stipulations: "Not to engage, directly or indirectly, as principal, agent or employe * * * in such business or manufactory * * * either in the city of New York, or at any point within the radius of two hundred and fifty miles thereof, so long as said plaintiff, or their successors shall continue in such business or manufactory. Plaintiffs brought an action to restrain the defendant from violating said contract. Defendant insists that the agreement is invalid, because, upon its face, it is in restraint of trade. Judge Freeman, who delivered the opinion of the court, at pages 93 and 94, says: "In the case at bar, the contract is clearly unreasonable as to space. The space covered by the contract includes three-fourths * * * of the territory of the state of New York. * * * Upon this point, therefore, the case is fully covered by the decision in Lawrence v. Kidder (10 Barb. 641), in which case the restraint extended to the territory of the State west of Albany; and the decision in Homer v. Graves (7 Bing. 735) in which case the agreement was, that a dentist would abstain from practicing his profession within one hundred miles of the city of New York. And again at page 96, the court says: "As nothing is presumed in favor of a contract of this kind, and the burden of showing the reasons and the facts making it valid rests on the party seeking to enforce it, the plaintiffs have failed to make out a case which calls for the interference of a court of equity. Whatever reasons may exist in favor of a contract between vendor and vendee, or between partners agreeing upon a dissolution * * * have no appliaction to the case at bar, which is the case of an employe who is sought to be condemned to idleness so long as the plaintiffs and their successors shall continue in the business, which would practically prohibit the defendant forever. To enforce such a contract, would make the individual, as well as the public, suffer; for the capacity of an individual to produce, is not only a source of gaining a livelihood for himself, but constitutes his value to the public."

In Dean v. Emerson (102 Mass. 480), A. and B. were partners in the business of manufacturing photographic materials, but upon their dissolution, entered into an agreement in which B. covenanted not to be interested in said business in Worcester county, or anywhere else within the limits of the United States, for the term of five years from the date thereof. The opinion of the court was delivered by the Honorable Horace Gray, Jr., now one of the justices of the Supreme Court of the United States, who held that said agreement contained two covenants, clearly distinct and divisible: (1) Not to carry on said business in Worcester county; (2) Within the limits of the United States. The first covenant, the court declared to be enforceable and valid; but as to the second covenant, that it was illegal and void, because in restraint of trade.

In More v. Bonnet (40 Cal. 251), the court held: (1) "A contract by which one of the parties binds himself not to engage in a particular business or occupation in the city and county of San Francisco, or state of California, is in restraint of trade, and therefore void as against public policy." (2) "Such a contract is an entire contract, and can be severed so as to enforce that portion relating to the city and county of San Francisco, and reject that relating to the state of California." (3) "The question whether a contract is entire or separable, can only be solved by considering both the language and subject-matter of the contract." (4) "A contract will generally be held to be separable when the price is expressly apportioned by the contract; or the apportionment may be applied by law to each item to be performed."

In More v. Bonnet, supra, suit was brought by plaintiff to recover damages for breach of contract, and enjoin defendant from carrying on business in the city and county of San Francisco or the state of California. The defendant demurred to plaintiff's petition, which was sustained on the ground that the contract is in total restraint of trade, and therefore void as against public policy, for the reasons herein before stated.

In Long v. Towl (42 Mo. 545), the court held: "A contract prohibiting one of the parties from carrying on any specific trade or business, not having any reasonable limitations as to the time or place is void. The prohibition which extends any further than will fully protect the party for whose benefit the contract is made, in his occupation or business, is an unreasonable restraint of trade, and will render the contract void."

In Empson v. Bissinger, 9 Cin. L. B. 86), B sold his stock of confectionary goods, including good will of the business, to E., and pledged himself not to re-engage in said business, either directly or indirectly, in the City of Cincinnati, for five years thereafter. The Court of Common Pleas of Hamilton county held: Such a contract "is not unreasonable nor oppressive, and will be enforced." Judge Connor, who delivered the opinion of the court in this case, at page 37, says: "Contracts of this description are in restraint of trade. are opposed to public policy, and are not encouraged."

Now, is the covenant, in the case at bar. not to re-engage in business within the state of Ohio, or elsewhere in the United States, for twenty-five years, a restraint that is

reasonable and not oppressive, whether it is treated as a divisible covenant or not? With the law as we find it in Ohio and elsewhere as our search-light, let us see whether it is or not. In the case at bar, the restriction extends not only to all territory within the eighty-eight counties of Ohio, but throughout the entire United States, for the period of twenty-five years, during all of which time, its enforcement means that defendants are precluded, not only from carrying on the business of manufacturing and selling rules, etc., but from gaining a livelihood for themselves and their families, by working at their trade, for daily wages, as rule makers.

It is a well-settled principle of law, that any reasonable or oppressive stipulation in a contract, which precludes a person from the right to employ his head, hands, industry or capital, in any lawful occupation or trade, in any avenue of trade, is void.

Our Supreme Court has said: Whether the prohibition is general or partial, the law starts out with the presumption that a contract in restraint of trade, is illegal and void. Under the rule laid down by Judge Ranney, a limited restraint of trade may be either good or bad. It is good when the prohibition is reasonable, and the prohibition is reasonable when it does not muzzle and strangle the one party without any real benefit to the other of them. It is also a principle of law, established by an almost unbroken line of decisions of courts of last resort that such contracts are good when the prohibition they impose is reasonable; and the crucial test to be applied in determining whether the prohibition is reasonable and not ruinous and burdensome, is this. Is the prohibition such only as would afford a fair and honest protection to the real interests of the person in whose favor it is given, and not so large as to override the good and welfare of the people, i. e. the public.

Now, clearly, whatever prohibition is larger than the needful protection of plaintiff in the case at bar, can be of no real benefit to anybody, and therefore only cruel and oppressive. It is, "in the eye of the law." unconscionable, unreasonable and illegal on the ground of public policy, as being hurtful to the interests of the public. Surely. the rule just stated, has been the recognized law of Ohio, ever since Judge Ranney delivered his opinion, in Lange v. Werk, supra, in 1853. It makes no difference whether the contract sought to be enforced is only in partial restraint of trade or not, because it will be declared void unless it be reasonable and not oppressive; and we are at a loss to imagine how a contract can be reasonable and free from anything savoring of oppression in which the prohibition imposed on the defendants is really greater than is necessary for the protection of this plaintiff. Now, this is the real rule by which the validity of the contract, upon which plaintiff plants its case, must be determined by the court. The infirmity ascribed to the contract

VOL. 3—17*

is, that the prohibition is to continue for twenty-five years, not only in all the territories within the state of Ohio, but the United States as well, and that even if it is a divisible contract, that both the time and territory embraced applied to Ohio alone is unreasonable, and wholly unnecessary for the protection of plaintiff's business, located in a city far distant from the city of Cleveland, where the only plant operated by it is located. Manifestly, under such circumstances, a restraining order would afford no real protection to plaintiff, because it really needs none, and therefore the only office the restraining order could possibly perform would be to needlessly handcuff and oppress these defendants.

The good will of a trade may be bought, sold, bequeathed or become assets in the hands of the personal representative of a manufacturer, but the skill, experience and reputation of a workman are things which can neither be bought or sold. But why is this so? Because they form a part of the individuality of the workman, and die when he dies. No court in Ohio has ever decided that a contract between manufacturers and workmen so extensive in territory and time —whether applied to Ohio alone or otherwise—as the one now under consideration by the court, is a legal and valid agreement. It now is, always has been, and always will be, one of the inalienable rights of every citizen in Ohio, to use his skill and labor in all useful avenues of employment, not only to secure food, clothing and shelter, but to accumulate property as well, and we think it may be regarded as absolutely certain, that our courts will never attempt to deprive any citizen of this sacred right in any manner whatsoever. If contracts of the sort under consideration could be enforced, the consequences naturally following such enforcement would be depriving a citizen of the means of obtaining a livelihood for himself and his family.

Clearly, by mere force of judicial action, rules producing such direful results would never be established.

Is the legal right on which plaintiff predicates his claim to the restraining order, clear? We think not. Because no court in Ohio has ever declared that a contract of the sort now under consideration is legal. But, on the contrary, the legal presumption is against the validity of all such contracts. Now, therefore, in this condition of affairs, the duty of the court is not only simple, but it is plain, because no rule of equity is more firmly fixed and settled than the doctrine that a petitioner is not in a position to ask for an injunction when the rights on which he rests his claim is, as a matter of law, either unsettled or uncertain. In this case, the benefit resulting from an injunction to plaintiff is slight, compared with the injury it will do these defendants. An injunction should never be granted when it will operate oppressively or contrary to the real justice of the case. The great office of the writ is to protect and preserve, not to tear down

and destroy. Clearly, the restraint on both freedom of trade, and the right to work in the covenant complained of, goes far beyond what the plaintiff can, in good conscience, either demand or require, and therefore it is void, because it is an unreasonable and oppressive restriction as well. Furthermore, this contract is against the principles and settled policy of the law of Ohio as· to any unreasonable or oppressive restraint of trade, and the sacred right of even the humblest citizen to be at liberty to struggle for his existence and those dependent upon him, in the exercise of any lawful employment, and therefore the prohibition sought is far beyond what is necessary for the protection of the plaintiff, or what substantial justice in this case really and truly demands.

Now, in conclusion, we hold, that the entire contract, whether treated as divisible or not, in the case at bar, is illegal and void, for the following amongst many other cogent reasons we might present:

1. Such contracts injure the parties making them, because they greatly diminish their means of procuring livelihoods and a competency for their families.

2. They tempt improvident persons, for the sake of present gain, to deprive themselves of the power of making future earnings, and expose such persons to imposition and oppression.

3. They tend to deprive the public of the services of men in the employment of which they may be most useful to the public, as well as to themselves.

4. They discourage industry and enterprise, and diminish the products of human ingenuity and skill.

5. They prevent competition, and are likely to increase prices, to the detriment and injury of the public.

6. They expose the public to all the evils of monopoly.

Now, I. have endeavored to fully and carefully consider all matters that have been presented and urged on behalf of the respective parties in this case, to the end that my conclusions might, at least, command the respect and confidence of all interested, if not concurrence on the part of those against whom they are drawn.

For the reasons already stated, both the motion to dissolve the injunction, and the demurrer to the petition, must be sustained.

Judgment accordingly.

(Affirmed by Circuit Court of Cuyahoga County.)