## HITCHCOCK v. ANTHONY.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1897.)

No. 481.

1. CONTRACT IN RESTRAINT OF TRADE—CONSTRUCTION—VALIDITY.

The lessee of a dock, upon which he conducted the business of dealing in coal and fish, sold and conveyed certain real estate near by, on which was situated another dock, to a dealer in lumber, the purchaser entering into an agreement at the same time by which he bound himself in general terms not to engage in the coal or fish business for a term of years, or to "do anything that will conflict with the said coal or fish business" of the grantor. *Held,* that such agreement was limited as to locality to the dock situated on the property sold, and was valid.

2. SAME—STATUTE PROHIBITING COMBINATIONS.

Laws Mich. 1889, Act No. 225, the purpose of which is to prevent combinations or agreements in restraint of competition in trade, does not render invalid an agreement by which one selling property binds the purchaser not to use it for a stated time in carrying on a business in competition with that of the vendor.

3. SAME—VIOLATION OF AGREEMENT—USE OF PROPERTY BY TENANT.

An agreement by the purchaser of property, that in its use he will not during a stated number of years "do anything that will conflict with" the business of the vendor, is violated by his leasing the property to another, to be used in carrying on business in direct competition with that of his vendor.

4. DAMAGES—BREACH OF CONTRACT—PROFITS.

In an action to recover damages for breach of an agreement not to use certain property in competition with plaintiff's business, loss of profits in such business in consequence of competing business carried on upon such property may be shown; and for that purpose evidence of the profits of plaintiff's business both before and after the breach of the contract is admissible.

Error to the Circuit Court of the United States for the Western District of Michigan.

This is an action for a breach of contract between William D. Hitchcock, plaintiff in error, and Thomas C. Anthony, defendant in error, whereby said Hitchcock agreed not to engage in certain business for a period of seven years from February 24, 1892. This contract was in writing, and was as follows: "This agreement, made and entered into this 24th day of February, A. D. 1892, by and between Thomas C. Anthony, of Sault Ste. Marie, Mich., and W. D. Hitchcock, of Chicago, Ill.: The party of the first part, Thos. C. Anthony, has this day sold and conveyed unto the said W. D. Hitchcock all the property at Detour, Mich., known as the Hurd & Heinstoin and Moiles property, for the sum of ten thousand dollars; and the said W. D. Hitchcock, party of the second part, agrees with the said Thomas C. Anthony to not purchase or offer for sale any coal, except what coal they may require for their own use, to any steamers, boats, or persons, and also to not traffic in the buying or selling of fish, except fish that may be caught with his own nets, or do anything that will conflict with the said coal or fish business of the said Thomas C. Anthony, and further agrees to not act as general agent and ticket agent, or in any capacity for any steamer or line of boats, nor to do any business whatever with said steamer or boats of any kind, as receiving and shipping of freight, merchandise, etc., except to receive their own goods and merchandise, and ship out same, when necessary, for the period of seven years from date thereof. And, further, that the said party of the second part agrees that while said Anthony gives full warranty deed, as required by said Hitchcock, yet said sale is made with full knowledge of said Hitchcock of the conditions of the deeds given by George Dawson, a former owner, regarding restrictions as to dock or shipping privileges; and said Anthony shall not be held responsible for any damage to said Hitchcock by reason of said restrictions in said Dawson convey-

ances. And, further, that the said Anthony may have the contents of one of the ice houses on said premises the present season, the same having been recently filled by said Anthony, together with the privileges of entering on said premises and getting said ice at his will during the coming season." The declaration alleged that Thomas C. Anthony was the lessee of a certain dock on the St. Mary's river, at the village of Detour, and was engaged in doing a coal and fish business thereon, his principal business being that of supplying coal to steamers. He was also the owner of certain real estate in said village fronting on the river, and upon which was situated another dock suitable for carrying on a like coal and fish business in competition with that conducted by himself. This real estate and appurtenant dock Anthony sold to W. D. Hitchcock for $10,000, and conveyed same by deed of general warranty. It is further averred that, as an additional consideration for said sale and conveyance, said Anthony entered into the agreement above set out, and that said agreement had been violated by leasing said dock to be used for the purpose of carrying on said prohibited business, and that the lessee thereunder had since engaged in the business of selling coal from said dock to steamers, in active competition with same business conducted by plaintiff on his own dock, whereby damages had ensued. There was a verdict and judgment in favor of the defendant in error.

M. F. McDonald and Watts S. Humphery, for plaintiff in error.
H. M. Oren and T. O. Clark, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The conveyance of this dock to Hitchcock, and his agreement not to engage in a business which should compete with that carried on by Anthony upon another and adjacent dock, bear the same date. This fact, in connection with the manifest purposes of the contract as indicated by its whole tenor, affords prima facie evidence of the simultaneous execution of the two instruments, and that the consideration for the contract was the sale and conveyance of the dock and realty to which it was appurtenant. They really constitute but one transaction, and should be read together.

It has been argued that this contract imposes a general restriction upon Hitchcock engaging in the prohibited business without limitation of territory, and is therefore against public policy and void. Anthony was engaged in supplying coal to steamers passing Detour, and also dealt in fish. This business was essentially one to be conducted upon a dock conveniently situated at Detour. Hitchcock was engaged in manufacturing and dealing in lumber, and the property purchased by him afforded facilities for that business. The business of neither conflicted with that of the other. In this situation Anthony sold to Hitchcock a desirable site for his lumber mill and yard and a dock, which furnished him shipping facilities, and, by a separate writing, bound him not to engage in the line of business which Anthony was conducting. The heart of the agreement lies in the stipulation that Hitchcock will not "do anything that will conflict with the said coal or fish business of the said Thomas C. Anthony." This clause, though an enlargement of the restriction as to detail, implies that the prohibition is not general, but limited. How and what is the limitation? This we must ascer-

tain by taking into consideration every part of the agreement, and ascertaining the meaning of the instrument in the light of the circumstances surrounding the parties at the time. We have already noticed the contemporaneous execution of a deed conveying to Hitchcock certain property fronting on the St. Mary's river and a dock extending out into the river. This deed is recited in the first clause of this contract. The last two clauses directly relate to the property conveyed by that deed. One limits Hitchcock's rights thereunder, while the other grants an easement to Anthony in a matter collateral to the question here involved. The only other paragraph of the agreement contains the stipulation restricting the purchaser of that property from engaging in the coal or fish business, or doing "anything that will conflict with the said coal and fish business of said Anthony." Now, this business which Anthony was conducting was one which could only be conducted upon a dock, and the dock appurtenant to the property conveyed to Hitchcock was so situated as that a similar business could be carried on upon it. The object of Anthony was to prevent competition, not at Detour generally, but by the use of this dock just conveyed to Hitchcock, and adapted to the doing of a competitive business. The circuit judge was of opinion that the circumstances were such as to justify a limitation of this restriction upon Hitchcock to the property so sold to him. To this conclusion we fully agree. Hitchcock's obligation, while widened by the stipulation that he should do nothing which should conflict with Anthony's coal and fish business as to details, is at the same time limited, by implication, in respect of locality. The agreement had reference alone to the uses of the dock sold to him, and bound him to make no such use of that dock, by himself or another, as should result in a competitive coal and fish business thereon.

An agreement prohibiting the use of a particular piece of property in a specific business, or prohibiting one of the parties from engaging in a competitive business for a reasonable time, and within a limited area, if not larger than necessary to protect the other, is a valid and enforceable engagement. American Strawboard Co. v. Haldeman Paper Co. (decided at present term) 83 Fed. 619; Navigation Co. v. Winsor, 20 Wall. 64; Gibbs v. Gas Co., 130 U. S. 396, 409, 9 Sup. Ct. 553; Stines v. Dorman, 25 Ohio St. 580–583; Hubbard v. Miller, 27 Mich. 15; Association v. Starkey, 84 Mich. 80, 47 N. W. 604; Timmerman v. Dever, 52 Mich. 34, 17 N. W. 230.

Neither is this contract void under the Michigan act, No. 225, Sess. Laws 1889. The Michigan statute cited was properly construed by Judge Severens, who tried this case below, when he said that:

"It is aimed at combinations between parties who, having each a separate business with no interest or concern in that of the other, join together to restrict the output or enhance the prices of goods; and not to cases where one owning a property which he could devote to a given purpose or not, as he pleases, conveys it to another, putting him under a restraint against employing it for such purposes, the vendor having a business which he is interested in protecting."

The breach of this contract averred, was that the defendant below had leased the said dock so conveyed to him to a firm of dealers in

coal "for the purpose of carrying on on said dock a coal and fish business in competition with the coal and fish business of the plaintiff," and that the lessees had thereafter conducted on said dock a competing business in supplying coal to steamers passing Detour. Upon this subject the court instructed the jury, in substance, that if this dock was leased by the defendant with the knowledge that the lessees intended to carry on a coal business in competition with the same business conducted on an adjacent dock by Anthony, and bargained for a rent "based upon the expectation and purpose of employing the premises for that purpose," and it was subsequently so employed, that would be a breach of the agreement "not to do anything which would conflict with the coal and fish business of Anthony." The jury were further instructed that if the lease was made with no purpose or expectation that the dock would be so used, and that Hitchcock "was indifferent to the use to which it should be put," and did not let it with an express intention of enabling them to use the dock in the coal business, the defendant would not be liable. We see no error of which the plaintiff in error could complain. The court throughout treated this agreement as one not attaching itself to the property, but as a purely personal agreement. We need not consider the correctness of this view, as it was the one most favorable to plaintiff in error. Treating it as a purely personal agreement, the stipulation that Hitchcock would do nothing which would conflict with the established coal business of Anthony was clearly broken if he let the premises with the intent that a competitive business should be done thereon, and obtained a rent based on the doing of a business thereon, which would conflict with the business done by Anthony. There was evidence tending to show that the letting was done with the purpose of aiding the lessees in carrying on the same business in which Anthony was engaged, and that the rent stipulated was paid with reference to the doing of that business. This, in our judgment, was a breach of the stipulation against doing anything which would conflict with Anthony's business, and we are not prepared to say that a mere letting free from any restriction as to the use, to one having no notice of the contract under which Hitchcock held the property, would not also be a breach, if such a business was thereafter done on the premises.

Evidence was admitted over objection of plaintiff in error for the purpose of showing a loss of profits in Anthony's coal business as damages resulting from the breach of this contract. This was objected to upon several grounds, namely: That such loss of profits was not the natural and proximate result of the breach complained of; that the profits of such a business as that conducted by Anthony was dependent on too many contingencies, was speculative and too uncertain to be the basis of any judgment; and, finally, that no damages except nominal damages could be recovered in a case of this kind unless they are stipulated in the contract. It has been sometimes said that the general rule is that anticipated profits cannot be a basis for recovery in any action for a breach of contract. But there is no sufficient authority for so broad a statement, for profits are always recoverable if proximate, natural, and certain. Sedg. Meas. Dam. (8th Ed.) §§ 176, 177, 192, 193.

In Brigham v. Carlisle, 78 Ala. 243, 249, Clopton, J., properly stated the principle when he said:

"Profits are not excluded from recovery because they are profits, but, when excluded, it ·is on the ground that there are no criteria by which to estimate the amount with the certainty on which the adjudication of courts and the finding of juries should be based."

In Griffin v. Colver, 16 N. Y. 489, 491, Seldon, J., in discussing the supposed rule that profits were not recoverable, said:

"It is not a primary rule, but is a mere deduction from that more general and fundamental rule which requires that the damages claimed should in all cases be shown by clear and satisfactory evidence to have been actually sustained. It is a well-established rule of the common law that the damages to be recovered for a breach of contract must be shown with certainty, and not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should per se prevent their allowance. Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative and contingent are not."

Most frequently, profits prevented are excluded as an element of damages, because such an injury was not a normal and proximate consequence of the breach of the contract. Such was the leading case of Hadley v. Baxendale, 9 Exch. 341, where the decision was that loss of profit of a mill was not a natural consequence of a carrier's delay in delivering machinery, the special circumstances not being communicated to the carrier. But the court in that case added that:

"If the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract which they could reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under their special circumstances so known and communicated."

The general subject was considered in Howard v. Manufacturing Co., 139 U. S. 199, 206, 11 Sup. Ct. 500, and U. S. v. Behan, 110 U. S. 338, 344, 4 Sup. Ct. 81. In the latter case, Justice Bradley, on this subject of damages for a breach including profits prevented, said:

"Profits cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson, in the case of Masterson v. Mayor of Brooklyn, 7 Hill, 69, 'they are the direct and immediate fruits of the contract,' they are free from this objection. They are then part and parcel of the contract itself, entering into and constituting a portion of its very elements,—something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation."

But in the case before us the very object of the contract which has been broken was to secure the coal business of Anthony against any loss of business and consequent profit which might result from a ·competitive business conducted on the dock sold by him to Hitchcock. To protect his business, and secure the possible profits resulting therefrom against competition, was the occasion of this agreement; and, if plaintiff in error has knowingly and purposely rented this dock for the purpose of enabling his lessee to carry on a competing coal business, the damages which are recoverable naturally and proximately

include any gain prevented which could be certainly shown to have resulted from the competition. The evidence offered was relevant and competent. It related directly to the business conducted by Anthony both before and after the contract, and before and after its breach, and did not touch any mere collateral business or anticipated collateral profit.

The admission of evidence as to the past profits of that business as bearing upon future-profits prevented was not error. It was a most important circumstance, which any business man would look to as a factor in any estimate of the future value of a business; and no reason occurs why a jury may not equally as well look to that element in considering whether there were any profits prevented by competition. Such evidence was admitted in Bagley v. Smith, 10 N. Y. 489, and Reiter v. Morton, 96 Pa. St. 229.

But it is further objected that the evidence upon which plaintiff relied to show loss of profits was vague and speculative, and did not amount to legal evidence of any loss of profits, and that the court should so have instructed the jury, having been so requested. There was evidence of the amount of coal sold by defendant in error to steamers for a series of years before and after this breach, and of a reduction in the profit per ton, caused by the lower price at which the competing dealer offered and sold coal. There was also evidence that while the demand for coal by steamers at Detour increased from year to year, as the tonnage navigating the St. Mary's river increased, the value of Anthony's business declined. This was competent evidence from which the jury might reasonably infer some damage by loss of profit. It was therefore not error to refuse an instruction limiting a recovery to nominal damages.

The question as to whether the verdict was for too great a sum, under the evidence, is not one for our consideration, being one remediable only under a motion for a new trial. The judgment must be affirmed.