ALBANY,
August, 1820.

## GRAY *against* CROSBY.

GRAY
v.
CROSBY.

THIS was an action of covenant tried at the *Putnam* circuit, the 2d of *November*, 1819, before Mr. Justice *Yates.* The action was brought on an agreement between the parties, under their hands and seals, dated the 6th of *April.* 1818, reciting that the plaintiff gave to *William Watts* a bond and mortgage for 5,000 dollars, the payment of which was secured by the land and premises in *Paterson* on which the plaintiff lived, and by land of the plaintiff in *Paulings*, called the *Burdock* place, and the land of the plaintiff in *Kent*, called the *Patty Wixon* place, which bond and mortgage had been duly assigned to the defendant; and that whereas the said land had been sold by virtue of the bond and mortgage, and divers suits and controversies had arisen between the parties, &c. the said parties, therefore, agreed that *J. C., C. A*, and *J. A.*, should, on or before the 20th of *April*, then instant, appraise the farm and premises on which the plaintiff lived in *Paterson*, at its real value, without reference to the price it sold for, under the mortgage; and then the said appraisers were to ascertain what was due to the defendant on the bond and mortgage with all the costs and charges, and strike a balance, and the balance against whom it should be found should be immediately paid by the party against whom it should be found; and in case the amount of the value of the appraisal was equal to, or exceeded the amount of the demands of the defendant, then the plaintiff was to have the *Patty Wixon* place, and the *Burdock* place; but in case the defendant's demands should exceed the amount of the appraisal, the plaintiff should have his option, to be determined immediately, whether he would pay the balance in money immediately, or have the apprai-

Where a party to an agreement insists on the payment of stipulated damages, as a discharge, it must appear that the damages stipulated are in lieu of a performance of the contract; the payment of which damages is an alternative for his election.

The defendant held a bond and mortgage executed by the plaintiff, and about which a controversy had arisen between them, and they entered into an agreement that three persons, named by them, should appraise the land and premises, and ascertain what was due on the bond and mortgage to the defendant, and strike the balance, and the party against whom the balance was found should immediately pay the same to the other party, &c.; and it was agreed, that if either party should refuse to fulfil the agreement, he should pay

to the other 500 dollars, " which should be considered as liquidated damages " The appraisers accordingly appraised the value of the land, and ascertained the balance due to the defendant on the bond and mortgage, and found a balance of 310 dollars, in favour of the plaintiff : *Held*, that the defendant could not, on offering to pay the 500 dollars, liquidated damages, consider the agreement as rescinded, and *set off* so much of the debt due to him on the bond as would satisfy that amount, and have the balance certified in his favour; but that the plaintiff was entitled to recover the 310 dollars, so found by the appraisers, but not the sum agreed as liquidated damages for not fulfilling the agreement.

sers immediately appraise the *Patty Wixon* place, and the amount be applied to the payment of the said balance ; and if it exceeded the residue of the claims of the defendant, after applying the first appraisal, then the defendant was to pay the balance ; but in case there should still be a balance in favour of the defendant, it shall then be optional with the plaintiff to pay the balance immediately in money, or have the said appraisers appraise the *Burdock* place, and its value applied to the payment of the defendant; and if the amount of the said appraisals shall exceed the amount of the defendant's claims, then he shall pay the balance ; and in case the whole amount of the said appraisals shall not satisfy the defendant's claims, then the plaintiff should immediately pay the balance. And it was further agreed between the parties, that the appraisers should take into consideration the case of the *Burdock* and *Patty Wixon* farms, and the damage done to them, if any, by the *defendant or his agents, since the sale* under the mortgage, and allow it to the plaintiff ; and that the plaintiff shall give immediate possession from the date of the agreement, of the farm and premises on which he lived, to the defendant ; and that the plaintiff should have the right to take off all his property from the same, and should not pay rent to the defendant, until the agreement was executed ; and that if the plaintiff should take the *Burdock* place and *Wixon* place, or either of them, according to the agreement, then he was to have immediate possession of them, or either of them which he should so take : That if the agreement was not carried into effect, according to its true intent, it should not affect, or in any manner interfere with the other business and proceedings of the parties ; and that if either of the parties should refuse to fulfil the agreement, according to its true intent and meaning, the party so refusing should pay to the other party the sum of five hundred dollars, which shall be considered as liquidated damages." The plaintiff, after stating the agreement in his declaration, alleged, that the appraisers named, before the time limited, appraised the farm on which the plaintiff lived in *P.* at 5,000 dollars, and ascertained the amount due to the defendant on the bond and mortgage, and for charges, &c, to be 6,326 dollars and 91 cents, and struck

a balance against the plaintiff of 1,326 dollars and 91 cents, and that the plaintiff immediately elected to have the *Wix-on* place appraised, and the appraisers accordingly appraised the place and the damages thereon at 480 dollars; and that after deducting that sum, there still remained a balance due to the defendant of 846 dollars and 91 cents; and the plaintiff thereupon elected to have the *Burdock* place appraised, &c. and the appraisers thereupon appraised the same, and the use thereof and damages done thereon, at 1,157 dollars and 58 cents, and the amount of which appraisement exceeded the balance of the claims and demands of the defendant, as determined by the appraisers, 310 dollars and 67 cents, which the defendant had refused to pay, although requested, &c. nor had he paid the 500 dollars, liquidated damages, &c. The defendant craved oyer of the agreement, and pleaded *non est factum*, with *notice* that he would give in evidence at the trial, that the plaintiff was, af the commencement of the suit, indebted to him in the amount of the bond above mentioned, that he would *set off* so much thereof as would be sufficient to satisfy and discharge the plaintiff's demand, and have the balance certified in his favour pursuant to the act.

After the plaintiff's witnesses were examined, the defendant admitted that the plaintiff was entitled, under the agreement, to the stipulated damages of 500 dollars, on the allowance of which he insisted that he had a right to consider the agreement as rescinded, and that the whole bond assigned to him by *Watts* remained in force against the plaintiff; and offered to prove that he had so elected and offered the plaintiff, before the suit was brought, and insisted on *setting off* a sufficiency of the amount of the bond to satisfy the said 500 dollars, and have the balance certified in his favour: but the judge decided that the *set-off* could not be allowed; that the bond was to be considered as cancelled and paid, and that the defendant had no right to have the agreement rescinded, by paying the stipulated damages; and directed the jury to find for the plaintiff the sum of 310 dollars and 67 cents, being one of the sums demanded in the plaintiff's declaration, with liberty to the defendant to move to set aside the verdict on a case made; and the jury found a verdict for the plaintiff accordingly, subject to the opinion of the

ALBANY,
August, 1820.

GRAY
v.
CROSBY.

Court on the above case, which was submitted to the Court without argument.

WOODWORTH, J. delivered the opinion of the Court. The principal question in this cause, arises on the construction of that part of the covenant declared on, which is contained in the following words : " It is further agreed, that if either of the parties to this agreement, shall refuse to fulfil this agreement, according to its true meaning and intent, the party refusing shall pay to the other party the sum of 500 dollars, which shall be considered *as liquidated damages.*" On the part of the defendant, it is admitted, that he is liable to pay 500 dollars, and on the payment of that sum, it is contended, the parties are placed in the same situation they were before the covenant was made.

There is no doubt that if, upon a view of the whole instrument, it shall appear to have been the intent, that the damages stipulated should be received, in lieu of a performance of every thing covenanted to be done, and as an extinguishment of the appraisement itself, then the defence is well founded. In order to determine this point, a careful examination of the agreement becomes necessary. The intent collected from the whole instrument, must be carried into effect, although there may be a difficulty in reconciling all its parts. After an attentive examination, my judgment is convinced, that the construction contended for by the defendant was not contemplated by the parties, and ought not to be sanctioned.

It appears, that the plaintiff having mortgaged three farms to *William Watts,* for securing 5,000 dollars, and this mortgage having been assigned to the defendant, he had, by virtue thereof, sold the land mortgaged, and then had possession of two of the farms. Divers controversies and suits having arisen concerning the premises, the parties were mutually inclined to bring the controversy to a close, by a submission to three individuals. The basis of the submission was, that an appraisement of the land be made at its real value, and be applied to the payment of the debt due from the plaintiff, and of all legal claims and charges of the defendant against him, without reference to the price the land

sold for under the mortgage.  The covenant, also, provides for the performance of certain things before the appraisement took place.  At its date, *April* 6th, 1818, the plaintiff held the possession of one of the farms, and by that instrument bound himself to give immediate possession thereof from the date, reserving the right to take off all his property.  The cause of inserting this clause may have been, that the farm on which the plaintiff lived, was, in the first instance, to be appraised, and, in any event, to be applied toward the discharge of the defendant's debt.  Both parties expecting an appraisement would be made in a few days thereafter, it may not have been deemed necessary to defer the delivery of possession.  The object and design of these parties appear to have been, that the decision of the appraisers should be conclusive on the matters submitted to them, and put an end to the controversy.  This must be carried into effect, unless the clause respecting *liquidated damages*, is in language so plain and explicit as to require a different construction.  The question submitted was of considerable magnitude; the terms of submission were settled on principles of justice and liberality; the plaintiff was to perform acts immediately, altogether inconsistent with the idea that the covenant could be rescinded after the appraisement, by either party, on paying a sum in damages, thereby converting it into a conditional arrangement, by which the parties were left to speculate as to the appraisement, and if not approved, then to proceed in their suits at law.  I think the parties contemplated otherwise, and that the clause relied on may be explained and applied in such manner as to leave the appraisement in full force, and allow the plaintiff the benefit of it.  This is a case of submission to arbitrators.  From the nature of the case, either party might revoke it; and if the authority had been revoked before the making the award, the arbitrators could not proceed.  This right is incident to every case of submission, whether it be by bond, covenant, or by parol.  The consequence of revocation would be, that where there is a penalty, it is forfeited, and the plaintiff would recover such damages under the breaches assigned, as he may have sustained.  (*Allen* v. *Watson,* 16 *Johns. Rep.* 205.)  If, instead

of a penalty, *eo nomine*, the parties agree on a sum as liqui-dated damages, and one party revokes the authority, in such case, I apprehend the plaintiff would recover the specific sum agreed on. I consider the exercise of the power of re-vocation as one of the acts to which the damages apply. But they do not apply to the sum of 310 dollars and 67 cents, which appears to be the surplus of the appraisement, after paying the defendant his whole demand. The da-mages were intended to embrace two objects: to remune-rate one party, if the other defeated the award by revoking the submission, and to compensate for the non-performance of those acts which the parties bound themselves to perform, previous to the award, and such as the defendant is bound to perform, if he retains the *Burdock* and *Wixon* farms. For aught that appears, every thing stipulated has been per-formed, excepting the matters which are the subject of this suit. That the stipulated damages do not apply as a substi-tute for the award itself, and thereby become the means of de-feating it, I think very plain, upon this consideration, that the damages are given, " *on a refusal to perform the agreement.*" The moment the award or appraisement was made, the most important part of the controversy was settled and concluded, without requiring any further act to be done. Before the award, a large sum was due to the defendant on the bond and mortgage; after the appraisement was made, and it appearing that the value of the land appraised ex-ceeded the amount of all the defendant's claims, the demand of the defendant was satisfied, because no further act was required to be done by either party to give the award effect thus far. By the terms of the submission and the appraise-ment under it, the defendant's demands were extinguished, if the lands were appraised at more than their amount. They were appraised at a greater sum, and that excess is claimed in this suit. It is perfectly clear to my mind, that the *liquidated damages* have no application to this part of the subject; there is nothing here *to refuse or perform,* and without something which could be the subject of refusal, the clause has no effect. If, then, so great a portion of the controversy is extinguished by the mere force of the ap-praisement, and without any further act of the parties, can

ALBANY,
August, 1820.

. GRAY
V
CROSBY.

there be any ground for saying, that the stipulated damages were intended as a substitute. If this point be conceded, and I do not see how it can be questioned, it would be absurd to allow, that as to the excess of the appraisement, whatever that might be, the parties intended, that instead of paying such excess, the party liable to the payment might elect to pay the liquidated damages in lieu thereof: And yet, if the defence is well founded, this is the necessary consequence. In all the cases where a party relies on the payment of liquidated damages as a discharge, it must clearly appear from the contract, that they were to be paid and received *absolutely in lieu of performance.* (4 *Dallas Rep.* 150. *Graham* v. *Bickham.*) In the case of *Slosson* v. *Beadle,* (7 *Johns. Rep.* 72.) and *Hasbrouck* v. *Tappen,* (15 *Johns. Rep.* 200.) it expressly appeared, that the damages were *in lieu of performance,* and payment thereof was an alternative reserved for the party's election. The present case is not equally explicit; but granting that no objection arises on this ground, still it must be limited to such things as were to be performed *by the parties,* and cannot extend to so much as the award, *per se,* settled and concluded; nor can they be substituted for the payment of the surplus, the right to which depends on the conclusiveness of the appraisement. In this view of the subject, the plaintiff cannot claim the stipulated damages, nor can the defendant elect, that on the payment thereof, his bond and mortgage may stand revived, and be set off against the plaintiff's demand. If it were necessary in this case, resort might be had, in furtherance of the intent, to a strict construction of the words " *shall refuse to fulfil ;*" for it must be admitted, that a mere refusal is very distinct from a stipulation to receive a certain sum, instead of performance. A party may refuse, still he is bound to perform his contract, and I cannot perceive how his refusal is to be adjudged a waiver of performance, unless it is so expressed. There is another point of view in which this question may be placed. The plaintiff alleges, that the defendant has not paid the 310 dollars and 67 cents, the surplus remaining after satisfying the defendant's demand. The defendant covenanted, that if the amount of the appraisement exceeded

his claims, he would pay the balance. If the defence can be supported, it must be solely on the ground of the defendant's refusing to pay *this sum*, and it would then present a case, where one party covenants, on a certain contingency, to pay to another, a sum of money, with proviso, that if he refuses, then to pay a larger sum as liquidated damages. Such facts constitute no right to recover beyond the money actually due. Liquidated damages are not applicable to such case. If they were, they might afford a secure protection for usury, and countenance oppression under the forms of law.

My opinion, then, is, that the set-off was properly excluded, that the plaintiff is not entitled to recover any thing for liquidated damages, and that the verdict was correctly taken for the 310 dollars and 67 cents. There is a further objection to the set off relied on at the trial; the defendant had sold three farms under the mortgage, but it is no where stated for what sum they were sold. The defendant's claim, including the bond and mortgage, was 6,326 dollars and 91 cents. At the trial, the defendant contended, that "*the whole bond assigned to him by Watts, stood in force*," and offered to set off 500 dollars, to pay the stipulated damages, and claimed to have the residue certified in his favour. If the defendant had been entitled to a set-off, it could only be for the amount remaining due, after crediting the money for which the land sold; yet, without offering any proof as to that point, the defendant claims the whole of the original debt without deduction. This was altogether inadmissible. The jury could not determine, from this statement, how much was allowable; or whether, after crediting the amount of sales, enough remained to satisfy the 500 dollars; and if there was more, how could they determine on the balance to be certified? On this ground, also, the defence was correctly excluded. The plaintiff is entitled to judgment.

Judgment for the plaintiff.