[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 403 
In the deed from Howland and wife, to Smith, of the premises now owned by the defendant, the grantee, covenanted, for himself, his executors, administrators and assigns, with the grantors, their executors, administrators and assigns, not to erect, or cause to be erected, any building, on that part of the premises conveyed, marked on the diagram, being a strip of land eight by thirty-five feet, adjoining the southerly line of the remaining land of the grantor; and following this covenant are the words, "and for a violation of the covenant, the said party of the second part, for himself, his administrators and assigns, hereby covenants and agrees, to pay the said party of the first part, their heirs, executors, administrators and assigns, the sum of $1,500 liquidated damages."
The question is, whether the plaintiff, who is the successor in title, from Howland, of the land not embraced in the deed *Page 405 
to Smith, is entitled to equitable relief, enjoining the defendant, the successor in title of the premises conveyed to Smith, from building on the strip of land mentioned in his deed. It is conceded that the defendant had notice of the covenant in the Smith deed, when it purchased. The deed to Smith was recorded before he conveyed the premises, and the defendant's deed, was made subject, in express terms, to all the conditions and restrictions contained in the deed from Howland, to Smith. The contention of the defendant is, that the covenant in that deed, by its true construction, permitted Smith and his grantees to build on the strip mentioned, on payment, to Howland or his assigns, of the sum fixed as stipulated damages, or in other words, that Smith and his assigns, had the option to leave the strip mentioned vacant, or to build upon it, on payment of the sum specified. We think this construction of the covenant is inadmissible.
It was stated by Lord HARDWICKE in Howard v. Hopkins (2 Atk. 371) that "in all cases where penalties are inserted in an agreement in a case of non-performance this has never been held to release the parties from their agreement, but they must perform it notwithstanding." That was the case of a bill filed by a vendee, for the specific performance of articles for the purchase of an estate, which provided that if either party should break the agreement, he should pay £ 100 to the other, and specific performance was decreed, against the objection of the defendant, that he was entitled to be discharged from the contract, on payment of the £ 100. The rule, deduced from the authorities, is, that when there is a covenant to do, or not to do a particular act, under a penalty, the covenantor is bound to do, or refrain from doing, the very thing, unless it appears from the particular language, construed in the light of the surrounding circumstances, that it was the intention of the parties, that the payment of the penalty should be the price of non-performance, and to be accepted by the covenantee, in lieu of performance. (Chilliner v. Chilliner, 2 Ves. Sr. 528;French v. Macale, 2 D. W. 269, and cases cited; Gray v.Crosby, 18 Johns. 219.) The question to be considered is, what was the primary *Page 406 
intent of the agreement? If the primary intent was, that the covenant should be performed, the annexing of a penalty, is regarded merely as security for the performance of the covenant, and not as a substitute for it. The point is very clearly put by Lord Chancellor SUGDEN, in French v. Macale (supra). He says: "The question for the court to ascertain is, whether the party is restricted by covenant from doing the particular act, although if he do it a payment is reserved; or whether, according to the true construction of the contract, its meaning is, that the one party shall have a right to do the act, on payment of what is agreed upon as an equivalent." It is undoubtedly true, that the presence of prohibitory or mandatory words in the covenant, followed by a penalty, is not conclusive against construing the penalty, as an alternative given to the covenantor, for non-performance. In determining whether, by the true construction of a covenant, the penalty is the price of the privilege of non-performance, the fact that the contract liquidates the damages for a breach may be considered, but it is not a decisive, nor do we regard it as a very material circumstance. If the primary intention was that the very thing covenanted should be done, then the sum named is in the nature of a penalty to secure the performance of the principal thing; and it can make no difference in the construction of the covenant, whether damages for non-performance are left to be ascertained by an issue quantum damnificatus, or the parties themselves conclusively settle the amount. (French v. Macale, supra;Coles v. Sims, 5 De Gex, Macnaghten and Gordon, 1; Long v.Bowring, 33 Beav. 585; Gray v. Crosby, supra; Clark v.Jones, 1 Denio, 516.) In Long v. Bowring the damages were liquidated, and the master of the rolls said: "I think the real meaning of the clause is, not to give Bowring this option, but to give to Long the option, whether he would have the agreement specifically enforced, or, in lieu thereof, accept a sum of 1,000l."
Coming then to the consideration of the covenant in this case, it is to be observed that the covenant against building contained in the first clause, is absolute and unqualified, and the damages fixed in the second clause are given for a violation of the *Page 407 
prior covenant, and not as a substitute for its non-observance. The language is not apt, to express an intention that the grantee should have the election to build and pay damages, or leave the premises vacant. The fact that this covenant follows thehabendum clause in the deed, whereas other covenants, restraining the use of the granted premises in certain other respects, precede this clause, is claimed to be material, because the latter covenants (as is said) are conditions, qualifying the estate granted; and the separation of the covenants in the deed, from the covenant in question, indicates, that it was not the intention of the parties to fasten an easement in perpetuity, upon the strip of land mentioned, but to create a mere personal obligation, which could be discharged by payment of a stipulated sum. But we cannot appreciate the force of this suggestion. The mere location of the covenants in the deed does not appear to us to have any significance. It may be inferred from the case, that the covenants, other than the one in question, were inserted, because Howland had entered into similar covenants with his grantor. However this may have been, those covenants did not operate as conditions, or as conditional limitations, of the estate granted. There is no clause of re-entry or forfeiture, and their violation would not defeat the estate of the grantee, although equity would enforce their observance. In this respect, they were not different from the covenant in question.
But passing from the consideration of the language of the covenant alone, and construing it, in connection with the circumstances, the conclusion is we think irresistible, that the prime motive of the covenant, was to secure the space in question, in perpetuity, as an open area, for supplying light and air to Montague Hall (then standing on the unconveyed land of the grantor), or to any subsequent building, which might be erected in its place. The building known as Montague Hall, was four stories high on Court street, and three stories high in rear. The northerly wall, abutted on the strip of land in question, and in the part of the wall adjacent to the strip, were windows, which supplied light and air to the three rear stories of the building, and for which there was no other provision. The premises *Page 408 
were valuable, and likely to become more so. The court was clearly justified in finding that it was the intention of the parties by the covenant in question, to secure in permanence, the very condition of things covenanted for, viz.: an open space adjoining, and for the benefit of, the unconveyed premises of the grantor. It is not reasonable to suppose that it was intended that the covenantor might at his election break the covenant, on payment of the stipulated damages. If the covenantee had sued for damages after a breach, then the question would arise, which was presented in Sainter v. Ferguson, (1 McN. G. 286), andCarnes v. Nisbett (7 Hurlst. Norm. 158, 778).
There can, I apprehend, be no doubt that the right to enforce the covenant passed to the plaintiff as the grantee of the dominant premises, and if necessary to decide the question, it would probably be found that, as an estate passed to the covenantor, from the covenantee, by the very deed containing the covenant, the necessary privity of estate was created, to attach the covenant to the land of the covenantor for the benefit of the unconveyed residue of the lot, and that both in respect to the burden, and benefit, the covenant adheres to, and follows the respective parcels, through all devolutions of the title.
But it is sufficient, that the defendant, purchased with full notice of the covenant, and as said by BIGELOW, J., in Whitney
v. Union Railway Company (11 Gray. 364), the covenant "is not binding on him, merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform." (See, also, Hills v. Miller, 3 Paige, 254; Trustees of Watertown v. Cowen, 4 id. 510;Barrow v. Richard, 8 id. 351; Trustees, etc., v. Lynch,70 N.Y. 440, and cases cited.)
The point, that relief in equity will only be granted to enforce an affirmative covenant, is answered by the cases ofFrench v. Macale, and Trustees, etc., v. Lynch
The judgment should be affirmed.
All concur.
Judgment affirmed. *Page 409