## RESTRICTIVE COVENANTS CONNECTED WITH THE SALE OF A BUSINESS.

[Circuit Court of Portage County.]

JOHN A. EWING v. ERWIN D. DAVIS.

Decided, February Term, 1903.

*Injunction—Equity Jurisdiction—Where One in Selling a Business Agrees Not to Engage in the Same Line Again in That Territory— And Also Stipulates as to Liquidated Damages in the Event of Violation of the Agreement.*

1. Where one in selling his business to another agrees, for the consideration received, not to engage again in the same line of business within a specified territory of reasonable extent, either for himself or in behalf of any other person, so long as the purchaser is engaged in the same line in that locality, and further agrees that, in the event of violation on his part of any of the conditions of the agreement, he will pay to the said purchaser the sum of $500 as liquidated damages, a court of equity has jurisdiction to enforce the restrictive covenant, notwithstanding the stipulation as to liquidated damages.

2. In a case where the territory embraced in such a covenant is a county, and the business conveyed is that of a jeweler, optician and watchmaker, and the limit as to time is as above, the covenant is not unreasonable, nor oppressive, nor against public policy.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

Plaintiff and defendant were engaged as partners in the business of jewelers, opticians and watchmakers at Kent, in this county. In June, 1900, plaintiff purchased from defendant for the consideration of $1,857.44 his interest in the business; and in the written contract of sale it was stipulated, "The said Davis further agrees for the consideration aforesaid not to engage again in business as a jeweler, optician or watchmaker, as jeweler merchant or jeweler salesman, manager or peddler, on his own account or in behalf of any one else at any place in Portage county, Ohio, so long as said Ewing is engaged in said business in said Kent. And said Davis further agrees for a violation

hereof on his part of any of the conditions and stipulations hereof to pay to the said Ewing as liquidated damages the sum of $500.''

After the sale Davis went to Cleveland, remaining there two years in business, and then returned to Kent and opened up a business as jeweler, optician and watchmaker, he being the manager of the business, which belonged to his brother. Plaintiff is still in business in Kent in the same room occupied by plaintiff and defendant before the purchase.

Defendant had for over twenty-four years been engaged in the jewelry, optician and watchmaking business in Kent; for six years prior to the same, being associated with plaintiff, and had a good reputation as a successful jeweler, optician and watchmaker throughout Portage county. At the time of the sale to plaintiff of his interest in the business defendant fully expected to remain in Cleveland, and stated to plaintiff that the amount of liquidated damages placed in the agreement was wholly immaterial to him, as he proposed to do business in the future in Cleveland.

The action is for an injunction to restrain defendant from conducting the business of jeweler, optician and watchmaker in Portage county in accordance with his agreement. The principal objections made by defendant to the granting of an injunction are:

First. That the only remedy that plaintiff has is an action at law to recover the $500 set forth in the contract as liquidated damages.

Second. That the covenant embraces too much territory, and is unreasonable and oppressive.

As to the first objection. It is true that the contract provides for the payment of $500 as liquidated damages in case of failure to perform the restrictive covenant; but that of itself is not sufficient to defeat the jurisdiction of a court of equity It is only when, from an inspection of the contract and the circumstances surrounding the parties at the time the contract was made, it appears that the covenantor was to have the alternative of performing the particular act or paying the specific sum, that an

injunction will not be granted. If it was the intention of the parties at the time of the contract that the covenant was to be performed and the sum specified as liquidated damages was merely a security that it would be performed, then the jurisdiction of a court of equity will not be excluded.

In the case of *Diamond Watch Co.* v. *Roeber,* 106 N. Y., 473, Roeber, the defendant, at the time of making the contract executed to the purchaser a bond in the penalty of $15,000, conditioned to pay that sum as liquidated damages in case of a breach of his covenant, and the court held that a court of equity had jurisdiction to compel the performance of the covenant by injunction. Andrews, J., in the opinion, says:

"It is, of course, competent for parties to a covenant to agree that a fixed sum shall be paid in case of a breach by the party in default, and that this should be the exclusive remedy. The intention in this case would be manifest that the payment of the penalty should be the price of non-performance, and to be accepted by the covenantee in lieu of performance (*Phoenix Ins. Co.* v. *Insurance Co.,* 87 N. Y., 400, 405). But the taking of a bond in connection with a covenant does not exclude the jurisdiction of equity in a case otherwise cognizable therein, and the fact that the damages in the bond are liquidated does not change the rule. It is a question of intention to be deduced from the whole instrument and the circumstances; and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced. It was said in *Long* v. *Bowring,* 33 Beav., 585, which was an action in equity for the specific performance of a covenant, there being also a clause for liquidated damages, 'All that is settled by this clause is that if they bring an action for damages the amount to be recovered shall be $1,000, neither more nor less.' There can be no doubt upon the circumstances in this case that the parties intended that the covenant should be performed, and not that the defendant might at his option purchase his right to manufacture and sell matches on payment of the liquidated damages."

What was the intent of the parties to this contract? Davis and Ewing had built up a trade in the jewelry, optician and watchmaking business. Davis had been a long time in the busi-

ness, was known throughout the country as an expert jeweler, optician and watchmaker. It was of great importance to Ewing that he should not be a competitor against him in that locality. Davis had determined to permanently quit the business at Kent and go to Cleveland and build up a city business. From these circumstances it is apparent that both the parties intended that the covenant was to be performed. Furthermore, the contract says, ''And said Davis further agrees for a violation hereof on his part of any of the conditions and stipulations hereof to pay to the said Ewing as liquidated damages the sum of $500,'' showing clearly that it was intended as a penalty for a breach of the contract and security for its performance, and not a consideration for the privilege of re-entering business.

In *Dooley* v. *Watson*, 67 Mass. (1 Gray), 414, Shaw, C.-J., says:

''The promise of the defendant to pay the plaintiff $100 if the defendant should fail to perform his agreement to convey the land, was merely a security for the performance of that agreement. When the penalty appears to be intended merely as a security for the performance of the agreement, the principal object of the parties will be carried out. The agreement between the parties in this case is clearly an alternative agreement. It was an absolute agreement to convey real estate, and may be treated in all respects as such either in a court of law or equity.''

In *Phoenix Ins. Co.* v. *Insurance Co.*, 87 N. Y., 400, it is held:

''If the primary intention was that the very thing covenanted should be done, the annexing of a penalty is regarded merely as a security for the performance of the covenant and not as a substitute for it.''

In *Howard* v. *Hopkins*, 2 Atk., 371, Lord Hardwicke said:

''In all cases where penalties are inserted in an agreement in case of a non-performance, this has never been held to release the parties from their agreement, but they must perform it notwithstanding.''

In *French* v. *Macale*, 2 Dru. & W., 269, Lord Chancellor Sudgen very clearly puts the point. He says:

"The question for the court to ascertain is whether the party is restricted by the covenant from doing the particular act, although if he do it a payment is reserved; or whether according to the true construction of the contract its meaning is that the one party shall have a right to do the act on payment of what is agreed upon as an equivalent."

As we have said, tested by these rules, there can be no question as to the proper construction of the contract between these parties.

Counsel for defendant calls attention to the case of *Dills* v. *Doebler*, 62 Conn., 366, and relies very much upon it. The facts of that case are entirely different from the facts of the case under consideration. The clause of the contract passed upon was as follows:

"And it is further mutually understood and agreed by and between the parties hereto that the said Doebler may be at liberty to practice dentistry in said Hartford at any time after termination of this contract by the paying to said Dills $1,000."

Andrews, C. J., who delivered the opinion, says:

"When the parties to an agreement have put into it a provision for the payment, in case of a breach, of a certain sum of money, which is truly liquidated damages, and not a penalty; in other words, when the contract stipulates for one of two things in the alternative, or on the one side the doing or not doing of certain acts, and on the other the payment of a certain sum in money in lieu thereof, equity will not interfere, but will leave the party to his remedy of damages at law (*Shiell* v. *Mc-Nitt,* 9 Paige, 101; *Skinner* v. *Dayton,* 2 Johns. Ch., 226, 235; Pomeroy Eq. Jurisp., Section 447). The case turns on the con-structions to be given to the contract. If the defendant has agreed not to engage in the business of dentistry in Hartford for the term of ten years under a penalty of $1,000 for a breach, equity will restrain him; for a penalty is merely a security for the performance of the contract, and is not the price for doing what a man has expressly agreed not to do. But if, on the other hand, the true interpretation of the agreement is that the $1,000 was intended to be liquidated damages, then the court should not interfere by injunction, because the plaintiff has his complete remedy at law, and this mainly on the ground of the nature of the contract.

And then the learned chief-justice, in speaking of the contract, says:

"The contract presents an alternative. It virtually says to the defendant, 'If you enter into the business of dentistry at Hartford after the termination of this agreement, you must pay the plaintiff the damages named.' The language used indicates this thought, and there is nothing in the relation of the parties, or in the business of dentistry, nor in the surrounding circumstances, to indicate otherwise."

The syllabus of the case is as follows:

"Injunction will not issue to compel the defendant not to exercise his trade or business in a city or in fifteen miles thereof, he having agreed that he would not so exercise it, and that if he did, he would pay complainant $1,000, and it further appearing that he has not paid such sum, and is insolvent."

We see nothing in this case in conflict with the views that we have expressed or the authorities referred to. Indeed the decision is in full accord with the rule laid down by Lord Chancellor Sudgen in *French* v. *Macale, supra,* which is the leading case upon the subject.

The second question made needs but little consideration as it seems to be well settled in this state that such a contract will be enforced. The defendant was a jeweler, optician and watchmaker; his remaining out of business would not generally interfere with competition in that trade and could not therefore affect public policy. The restraint was partial, only applying to one county, and to continue only so long as plaintiff should remain in business at the village of Kent. Therefore it was not unreasonable or oppressive. There was also a valuable consideration. In *Lange* v. *Werk,* 2 Ohio St., 519, it is held:

"Before such contract can be enforced, it must appear from the pleadings and proofs: 1. That the restraint is partial. 2. Founded upon a valuable consideration; and, 3. That the contract is reasonable and not oppressive."

Furthermore the very effect of the clause was to provide against the defendant engaging in business where he had es-

tablished a special reputation as an expert in his particular trade which, as shown by the testimony, included all or nearly all of Portage county.

In *Morgan* v. *Perhamus,* 36 Ohio St., 517, it is held:

"M, a married woman, engaged in carrying on the business of millinery and dress-making with her separate property, and on her own account, in the town of F, sold her stock of goods, together with the good will of the business, and engaged not to carry on the business at any time in the future at the town of F, or at any place within such distance of said town as would interfere with such business, whether the same was carried on by the purchasers or their successors: *Held*: That such agreement in equity is binding, and that, in an action brought by the successors of the purchaser, M will be enjoined from carrying on such business in violation of the agreement."

Finding and decree in favor of plaintiff, enjoining the defendant as prayed for in the petition.

*Stuart & Stuart,* for plaintiff.

*Siddall & Rockwell,* for defendant.