CHARLES P. VANDIVER, Respondent, v. J. K. ROBERTSON & SON, Appellants.

Kansas City Court of Appeals, May 6, 1907.

1. CONTRACTS: Construction: Publishing Paper. A newspaper publisher agreed with a rival publisher to discontinue the publication of his newspaper at the town and not to resume it. He then sold his paper to a stranger and agreed to defend him in the publication of the paper at the same town. *Held*, he violated his contract, since to discontinue the publication was to stop the existence of the paper, and the intention was not to take the publisher personally out of the newspaper business, and his contract with his purchaser made him a party to the continued paper.

2. ———: ———: ———: Consideration. The consideration for the contract was four hundred dollars; the paper was sold for $3,500. *Held*, that the above interpretation is not unreasonable, since the contract does not stop the publication anywhere except at the town named.

3. ———: Breach: Damages.  The damages for the breach of the contract is held to be the consideration for it, since the vendee should be compensated for the outlay for which he received no return.

4. ———: Construction: Public Policy: Restraint of Trade.  The contract held not to be against public policy since it only restrained the publication at the town named and not generally.

5. TRIAL PRACTICE: Instructions: Proper Judgment.  Where the trial is before the court instructions are scrutinized with a much less critical eye than they would be before a jury, and where the result is right the method by which the court reached it is not so material.

Appeal from Randolph Circuit Court.—*Hon. W. P. Cave,* Special Judge.

AFFIRMED.

*A. R. Hammett* and *J. A. Collet* for appellants.

(1)  The court will place upon the contract that construction which will make it most reasonable and just to all parties.  Bishop on Contracts, sec. 400.  (2) It being admitted by plaintiff that the contract between him and defendants was prepared at his direction, by his attorney, and without the knowledge or advice of defendants, said contract will be most strictly construed against plaintiff as the party employing the language of the contract.  Bishop on Contracts, sec. 414.  (3) Where particular words of description are employed with general words, the latter are to be limited in their meaning to embrace only a class of things indicated by the particular words.  This rule is that which is known as the doctrine of *ejusdem generis,* and is universally accepted by the courts.  Bishop on Contracts, sec. 196; Renn v. Lodge, 83 Mo. App. 442; Lewis' Sutherland Statutory Construction, secs. 423, 424 and 425; Kerney v. Paving Co., 86 Mo. App. 573; Ex parte Neet, 157 Mo. 527; Southwest Light Co., v. Scheurich, 174 Mo. 235.  (4)  Neither will the court resort to a strained

or unnatural construction of the terms of a written contract in order to impose on a party to the contract a liability which neither the language of the agreement nor the situation of the parties justifies. Trust Co. v. Yorke, 81 Mo. App. 342. (5) Contracts will be so construed, where there is any ambiguity or uncertainty as to the intention of the parties, that there will be no violation of any law in the enforcement of the contract. Bishop on Contracts, sec. 392. (6) To give to the contract in question the construction contended for by plaintiff, would make the contract in restraint of trade and therefore invalid. Ray's Contractual Limitations, sec. 59. (7) If defendants violated the contract entered into with plaintiff in the sale of their newspaper in Mitchell, then the measure of plaintiff's damage is such a sum as will compensate him for what the evidence shows that he actually lost in profits on business that would have been given to him but for the competing and rival paper, and the plaintiff having failed to show by his evidence any loss to his business in profits on account of the existence of the rival paper, only nominal damages are recoverable. Peltz v. Eichele, 62 Mo. 171; Addington v. Cullinane, 28 Mo. App. 238; Burdall v. Johnson, 99 S. W. 2.

*Virgil Conkling, J. E. Montgomery* and *H. J. West* for respondent.

(1) Unless there is something in a contract indicating a contrary intention the language should be construed in accordance with its plain, usual and ordinary meaning. Goode v. St. Louis, 113 Mo. 257; Lovelace v. Protective Association, 126 Mo. 104; Sachlaben v. Wolfe, 61 Mo. App. 28; Maginn v. Lancaster, 100 Mo. App. 116. (2) It is an elementary rule of construction that phrases and sentences are to be construed according to the rules of grammar and that from such construction it is not allowable to depart unless adequate grounds are found. Reavis v. Ins. Co., 78 Mo. App. 14. (3)

That the construction must be the one most reasonable and just. That is, the one which will give us something for our four hundred dollars. (4) That the construction must be strict against the party who wrote the contract. That is, if there be any reasonable doubt as to its plain, just meaning. But is there any doubt here as to its plain, common-sense meaning? (5) What the rule of *ejusdem generis,* has to do with the construction of this contract is beyond our comprehension; but we adopt it just the same. (6) The contract is not void as in restraint of trade. Peltz v. Eichele, 62 Mo. 171; Gill v. Ferriss, 82 Mo. 156; Gordon v. Mansfield, 84 Mo. App. 367. (8) Plaintiff is entitled to recover as damages the consideration paid for the contract. 8 Am. and Eng. Ency. Law, p. 634; The Law of Damages, Field (Rev. Ed.), sec. 262; Falke v. Harding, 13 Pa. St. 242.

ELLISON, J.—Plaintiff brought this action to recover damages of the defendants for an alleged breach of contract. There was a change of venue and the cause was submitted to W. P. Cave, Esq., of the Randolph county bar, as special judge, without the aid of a jury. There was a finding and judgment for the plaintiff.

The action grew out of the following contract between the parties: "This contract made and entered into in duplicate, this thirty-first day of January, 1905, by and between C. P. Vandiver, of Keytesville, Missouri, editor and publisher of the Chariton County Courier, a weekly newspaper printed and published in the town of Keytesville, Missouri, party of the first part, and J. K. Robertson & Son, a partnership firm composed of J. K. Robertson and James W. Robertson, of Keytesville, Missouri, proprietors of the Chariton County Signal, a weekly newspaper printed and published in said town of Keytesville, Missouri, parties of the second part, witnesseth: That for and in consideration of the sum of

four hundred dollars ($400) to them paid by the said party of the first part, the receipt of which is hereby acknowledged, second parties agree to discontinue on and after the third day of February, 1905, the publication of said Chariton County Signal at said town of Keytesville, Missouri, and at no time during the time that said Vandiver may be in the newspaper business at said town of Keytesville to resume the publication of that or any other newspaper at said town of Keytesville, nor to engage in or be in any way interested in any newspaper published in said town. It is further agreed that said parties of the second part shall not keep an editor at said town of Keytesville nor keep or maintain any public office therein in connection with any newspaper that they may own or in which they may be interested at any place other than said town of Keytesville. In witness whereof," etc.

Within a week thereafter defendants sold their paper for three thousand five hundred dollars to Mr. Mitchell to be published in Keytesville. It was published for one issue under its old name, but was thereafter published in Keytesville under the name of the "Chariton Recorder." The contract of sale between defendants and Mitchell contained a clause whereby defendants covenanted with him that they would warrant and defend his right "to continue the publication of said newspaper under the name of the Chariton County Signal, and that in the event he should be restrained by any court of law from continuing said newspaper business under said name this shall amount to a breach of warranty," etc.

The true construction of the contract between plaintiff and defendants is the principal question for decision. What was meant by the clause that defendants agreed after the third of February, 1905, "to discontinue the publication of the Chariton County Signal at the town of Keytesville?" If we confine ourselves to

the language of the parties and their acts, which we should do when they are not ambiguous, we find that there was a paper being published and that defendants agreed to discontinue its publication. This they did not do, for they became parties to its continued publication by selling to another with that *avowed purpose.* They are therefore, to all intents and purposes, continuing the publication of the paper, for they sold it for that purpose and agreed to protect and defend their vendee in the publication. The publication of the paper has not been discontinued.

Defendants argue for the construction that defendants, themselves, were to cease to publish the paper— that it was the intention to take defendants *personally* out of the newspaper business in Keytesville, and not that the paper would not be published. The contract would then have to be rendered that defendants were to discontinue the business of publishing the paper. But it does not read that way; it reads that they will discontinue the publication of the paper, which means that they will discontinue the paper, that is, the issue of the paper, for a paper is such an institution as to discontinue its publication, is to discontinue its issue; and to discontinue its issue, is to discontinue its existence. There is no such thing as a newspaper without a publication, and, as just said, if we discontinue its publication we discontinue its existence.

It may very well be that if defendants had not been a party to the continued publication, they would not be personally liable — that is, that they were not legally bound to warrant to plaintiff that no one else would continue to publish the paper. As for instance, if they had sold it with the intention in good faith, that it should be taken away from Keytesville and published, but that their vendees had nevertheless kept and published it there. But the petition guards that condition of case by alleging that defendants designed and in-

tended to have the publication continued in Keytesville, and the evidence sustains that view, in that defendants by their contract with Mr. Mitchell agreed that he should so continue at that place and that they would protect him in it.

There was presented by defendants' counsel an argument which deserves additional notice; for it is a persuasive argument in cases involving the construction of contracts, as is shown by authorities in their brief. It is that of the reasonableness of our interpretation of the contract. It is argued that here was a newspaper plant which sold for three thousand five hundred dollars and yet plaintiff says that defendants agreed to discontinue the paper for the small sum of four hundred dollars paid them by the plaintiff. But it must be remembered that plaintiff does not say that the publication of the paper was not to be made at any place. It was only to cease at the one town. It could have been taken to, and its publication continued at, any other town of which there are several in Chariton county and in that immediate vicinity of the State. So the price paid for the mere discontinuance of the paper in one town, cannot fairly be termed so unreasonable as claimed.

It is next insisted by defendants that the recovery of four hundred dollars was more than the damages shown by the plaintiff. That insistence is combatted by the latter. But be that as it may, the case as made, shows that plaintiff paid four hundred dollars to defendants as a consideration for the discontinuance of the other paper in Keytesville and that it was not discontinued. He should therefore recover back what he paid. The rule is that he should be compensated for his outlay for which he received no return, and that, in this instance, is the money paid. [1 Sutherland on Damages, 1.]

The contract was not invalid as being in restraint

of trade. Contracts in restraint of trade are made invalid from considerations of public policy, and when the contract is so limited as that its tendency will not be to inflict a loss upon the public, it does not fall under the ban of that rule. So it has ever been held that while an absolute contractual prohibition would be invalid, yet where the restraint is upon pursuing the trade, or avocation, within a limited locality only, there is no objection to it. [Peltz v. Eichele, 62 Mo. 171; Gill v. Ferris, 82 Mo. 156; Gordon v. Mansfield, 84 Mo. App. 367.] In the latter case the authorities are examined at length. So therefore the contract in this case being only intended to restrain the publication of a single newspaper in one community and its publication being left free to its owners in any other place, it was not invalid.

It is contended by defendant that the trial court gave declarations of law which are inconsistent with the finding of four hundred dollars in plaintiff's favor. In the first place it must be borne in mind that under well-recognized practice in this State, when a case is tried by the court without a jury, declarations of law count for much less and are scrutinized with a much less critical eye than would be instructions to a jury. And in this case, since we have found that the trial court gave a correct construction to the contract, we find little or no practical benefit in discussing the declarations of law to which we have referred. If the right view of the contract has been taken then, as already intimated, plaintiff was entitled to a judgment for the four hundred dollars which he paid. So, if we should concede all that has been said on the measure of damages or the mode of arriving at what they were, yet the judgment is for the party, and in the amount, that the law commands it should be.

It is manifest that the learned trial court set aside as not within the legal limits of the case, all special damage claimed in the petition and that he allowed

to the plaintiff the amount which he paid out and for which he did not receive any return.

After a careful examination of the record in connection with the arguments of the respective counsel, we find ourselves without authority to disturb the judgment and it is accordingly affirmed. All concur.