J. W. WILLS, SR., et al., Appellants, v. J. J. FORESTER et al., Respondents.

Springfield Court of Appeals, January 10, 1910.

1. **CONTRACTS: Sale of Business: Agreement Not to Engage in Rival Business.** Under a contract for the sale of the stock and good will of a lumber business the sellers agreed not to engage in a general retail lumber trade in the same town for a period of fifteen years. *Held*, this agreement was legal and binding and not against public policy.

2. ————: ————: ————: **Injunction.** Where parties agree for a consideration not to engage in a given business for a definite time in a certain locality, a violation of the agreement entitles the parties injured to injunctive relief.

140 App.—21

3. ———: ———: **Penalty and Liquidated Damages.** Where under a contract of sale of a business the parties agree not to engage in a rival business in the same locality for a specified time and the contract contains a provision for the payment of a stipulated sum on a breach, and the amount is not "disproportionate to the probable damages," it will be held to be liquidated damages and not a penalty.

4. ———: ———: ———: **Relief in Equity.** An agreement for liquidated damages to be paid in case of breach of a contract not to engage in a rival business in a certain locality for a specified time, does not oust a court of equity of jurisdiction to enforce specific performance or prevent the breach by injunction, where from the contract it appears that the parties did not intend that the payment of the sum stipulated could be paid in lieu of performance and the recovery thereof should be the only remedy. In such a case the remedy at law for damages and the remedy in equity are cumulative.

Appeal from Phelps Circuit Court.—*Hon. L. B.. Woodside,* Judge.

REVERSED AND REMANDED (*with directions*).

*Jones Bros.* and *C. H. Shubert* for appellant.

(1) The contract of May 19, 1909, to refrain from lumber business was valid and legal. Jacket Co. v. Angelica, 121 Mo. App. 226. (2) Injunction is a proper remedy for violation of such contract. 3 Parsons on Contracts (9 Ed.), p. 343; McCurry v. Gibson, 108 Ala. 459; Gill v. Ferris, 82 Mo. 156; Gordon v. Mansfield, 84 Mo. App. 367. (3) Fixing specific sum of forfeiture does not by its payment or otherwise, destroy the right of the purchaser to insist upon the covenant to refrain. Nor does it operate to deprive him of injunctive relief. Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; 22 Cyc. 869; High on Injunctions (4 Ed.), secs. 1139-1140; 10 Current Law, 260; Heinz v. Roberts, 110 N. W. 1034. (4) There is no adequate remedy at law for the. reason that the damages sustained are not susceptible of computation. Am. Elec. Works v. Varley Co., 3 Am. Cas. 975 (26 R. I.

295); Southern F. B. Co. v. Garden City S. Co., 7 Am.
Cas. 50; Springfield R. Co. v. Springfield, 85 Mo. 674.

*Watson & Holmes* for respondents.

Where the parties to an agreement have added a
provision for the payment in case of a breach, of a
certain sum of money, which is liquidated damages and
not a penalty, equity will not interfere to decree a
specific performance of the first alternatives, but will
leave the injured party to his remedy of damages at
law. Pomeroy's Equity Jurisprudence (3 Ed.), secs.
447, 456; Adams Equity (8 Ed.), p. 108; 1 Story's
Equity, secs. 717a, 793; Story's Equity (10 Ed.), secs.
521, 590; Jaquith v. Hudson, 5 Mich. 123; Hands v.
Concordia, 42 Md. 460; Schrell v. McNitt, 9 Paige 101;
Skinner v. Dayton, 2 Johns 526; Philadelphia Ball
Club v. LaJoie, 90 Am. St. Rep. 645; Dills v. Doebler,
36 Am. St. Rep. 345; Martin v. Murphy, 129 Ind. 464.

STATEMENT.—This was an action for an injunction
to restrain the respondents from operating and conduct-
ing a lumber yard in the city of St. James, Phelps
county, Missouri, in violation of a written agreement
executed by the parties appellant and respondent on
the 28th day of May, 1906, in which respondents bound
themselves "to refrain from engaging in the general
retail lumber business in the city of St. James, Mis-
souri, for a period of fifteen years from the date of this
contract."

The evidence and admissions of respondents estab-
lish the fact that after having entered into said con-
tract whereby they sold and delivered their business to
appellants, they opened and began to operate a lumber
yard in St. James contrary to the terms of said agree-
ment, as competitors of appellants, and advertised the
fact in a newspaper published in said city, and were
engaged in such competitive lumber business at the
time of and prior to the commencement of this suit.

Among other defenses, it was claimed "that the contract was in restraint of trade," which clause in the answer was on motion stricken out by the trial court. The pleadings presented the issue and the findings of the trial court were presumably based upon a statement in the contract stipulating that in case of "any violation of the agreement by the parties of the first part (respondents) they hereby acknowledge themselves indebted to the said parties of the second part, either collectively or singly, in the sum of one thousand dollars."

The judgment of the trial court was for the respondents dismissing the bill and giving judgment for costs with an order of execution. The evidence necessary to a better understanding of the case is set out in the opinion.

NIXON, P. J.—The evidence in this case clearly shows that the reason appellants purchased the Forester & Powell lumber business was "that the trade that came to St. James was not sufficient to support two lumber yards upon a reasonable basis." It is also shown that the one thousand dollars mentioned in the contract to be paid in case of breach had never been paid by respondents to appellants at the time of the institution of this suit.

Upon the sale being completed, the respondents delivered their business to appellants in accordance with their contract. Appellants took possession about the 28th day of May, 1906, and continued to operate the business up to the time of and after the institution of this suit in August, 1908. It appears that sometime about the 1st of July, 1908, the respondents opened a lumber yard in the city of St. James in their own name and went into business again. They kept for sale about the same class of goods and stock usually kept in a general retail lumber business and the same class of goods that they sold to appellants. They continued in the

business from the 1st of July, 1908, until after the institution of this suit and are still engaged in said business.

I. The consideration named in the contract was sufficient to support the agreement of the respondents not to engage in the general retail lumber business at St. James for a period of fifteen years and was legal and binding and not against public policy. [The Angelica Jacket Co. v. Angelica, 121 Mo. App. 226, 98 S. W. 805; Gill v. Ferris, 82 Mo. 156; Vandiver v. Robertson & Son, 125 Mo. App. 307, 102 S. W. 659.]

II. Under the decisions of the courts of this State, where parties agree for a consideration not to engage in a given business for a certain time in a given locality, like the contract in this case, a violation entitles the parties injured to injunctive relief by equity. This has been long and uniformly held to be the law in this State and an injunction is the proper remedy to restrain the violation of such a contract. [The Angelica Jacket Co. v. Angelica, supra; Gill v. Ferris, supra; Gordon v. Mansfield, 84 Mo. App. 367.]

III. The respondents have pleaded a clause in their contract which recites that the damages for its violation are stipulated and respondents contend that therefore the jurisdiction of a court of equity to grant injunctive relief is ousted by the very terms of the contract itself. This is the principal question for consideration in this case. For the purpose of bringing into review and under inspection the most prominent provisions of the contract, they may be sectionalized, so as to bring out in stronger light the controlling question to be discussed and decided in this case.

(1) The property purchased by the appellants is specifically described in the contract as follows: "The said parties of the second part have this day purchased of the parties of the first part their entire stock of lumber, consisting of doors, windows, moulding, paints, oils, shingles, lath, lumber, both rough and dressed,

lime, cement, etc., *together with their influence and good-will."* It is to be noted that by the terms of this contract, the appellants purchased not only the tangible merchandise in the stock of lumber, but also the intangible property—the respondents' influence and good-will in the business—a material asset, and deemed of such value to the business as to be inserted in the contract of sale and transferred with the stock of lumber.

(2)    Another clause of the contract is as follows: "In further consideration of the above purchase, the said parties of the first part agree to refrain from engaging in the general retail lumber business in the city of St. James, Phelps county, Missouri, for a period of fifteen years from the date of this contract, either directly or indirectly, by person, corporation, individual or clerk."

No language could be used that would more clearly embody the intention of the parties to the contract. It was unmistakably the intention to prevent the respondents from engaging in the general retail lumber business in the city of St. James for a period of fifteen years, so plainly expressed as not to admit of two constructions.    The contract is unequivocal, unconditional and absolute in its terms.    Yet, in violation of the prohibitions of this contract, the respondents soon after turning over the business and after having received a full consideration for the lumber and merchandise and also for their influence and good-will, commenced to assist in operating the lumber yard of J. M. Clark & Son in the city of St. James, and in July, 1908, set up for themselves a general retail lumber business in the same town.    J. W. Steen stated as a witness that he was the publisher of the St. James Journal, a newspaper published in St. James. "I know J. J. Forester and W. H. Powell; they are in the retail lumber business.    Mr. Forester authorized me to put an advertisement in my paper of July 17th, 1908, and similar notices have been

carried in my paper nearly every week down to the present time." Appellants then introduced the St. James Journal of July 17, 1908, in which appeared the following advertisement:

"FORESTER & POWELL LUMBER CO.

"We have bought the lumber stock of J. M. Clark & Son. Have ordered and in transit eight cars of lumber and all kinds of building material. We bought on the lowest market that has existed for several years. Our prices are lower than those of any competitor in the county. The grades of our lumber are the very best. Come and get prices."

J. J. Forester, one of the respondents, testified: "Mr. Powell opened up our lumber yard as stated in the complaint some time in July, 1908, and I assisted in operating the lumber yard of J. M. Clark & Son after the contract now in suit was made. Mr. Powell and I are still running the lumber yard at St. James and it is our intention to continue to run it."

(3) The respondents in their answer set up the only substantial defense offered in this case,—a clause in the contract which provides that for "any violation of the above agreement by said parties of the first part, they hereby acknowledge themselves to be indebted to said parties of the second part, either collectively or singly, in the sum of one thousand dollars, to be paid on demand or collected as any other civil case by suit as upon an open account."

The effect of this provision of the contract is the storm-center of the controversy in this suit, and it is the only feature of the case upon which the trial court could have entered a judgment for the respondents. The question presented is, What effect does the contract for stipulated damages have to oust the equitable jurisdiction to enjoin a breach by the respondents. The argument of the respondents is stated in their brief as follows: "If the provisions in this contract for the

sum therein stipulated upon breach of said contract was intended by the parties as stipulated damages, then appellants are remitted to their action at law to recover their damages and equity will not aid them by way of injunction."

The question thus presented is of first impression so far as the appellate courts of this State are concerned, but it has been a vexed question, much labored, in other jurisdictions, and there are some conflicts in courts of last resort that are irreconcilable. The question at the bottom of this inquiry is to ascertain what was the intention of the parties appellant and respondent, deducible from the four corners of the contract and the surrounding circumstances at the time it was entered into. As we have seen, the language of the contract is that for any violation of the agreement by the respondents, they bound themselves in the sum of one thousand dollars "to be collected by suit, etc." Such provision of the contract for the payment of this sum of money upon a breach of the contract was evidently intended by the parties as stipulated damages and it is so claimed by respondents in their brief. Tested by the rules stated by the text-writers and the authorities, the sum named in this contract is unquestionably liquidated damages. "Where a contract is not to engage in a rival business in a particular locality, or engage in trade or practice a profession within designated limits, and a provision is made for the payment of a stipulated sum on a breach, the general tendency of the cases is to treat such amount as liquidated damages and not as a penalty." [19 Am. and Eng. Ency. Law, 420.] "The fact that a contract is for the performance of a single act or condition is regarded by the courts as favoring the construction that a stipulated sum to be paid on nonperformance is to be regarded as liquidated damages rather than as a penalty." [19 Am. and Eng. Ency. Law, 405.]

In the case of Jaquith v. Hudson, 5 Mich. 123,

it is said: "When A and B entered into an agreement, in and by which it was provided 'that said A agrees to sell, and by these presents does sell and convey, unto the said B, his heirs and assigns, all his right, title and interest in the stock of goods now owned by the firm of A and B, together with all the notes, etc.; and that the partnership that has existed between A and B is hereby dissolved; and that the said A, by these presents, agrees that he will not engage in the mercantile business in T, for himself, or for or in connection with any other one, for the space of three years from this date, upon the forfeiture of one thousand dollars, to be collected by said B as his damages.' *Held,* that this forfeiture relates only to the agreement not to engage in business, and that the sum mentioned as stipulated and ascertained damages, is to be recovered on a breach of that agreement, and is not a penalty."

Also, in May v. Crawford, 150 Mo. 504, 51 S. W. 693, our Supreme Court, in determining whether a provision in a contract for the payment of money upon a breach of the contract was a penalty or liquidated damages, after reviewing at length the authorities bearing upon the question, said: "The sum of the whole matter is that where the contract is one touching a legal subject-matter, the parties *sui juris* and the damages for a breach can be computed with certainty by definite rules, the courts will construe it to be a penalty; but where from the nature of the contract the damages cannot be calculated with any degree of certainty, or any attempt to get the actual damage would be difficult, if not vain, or where 'the exact damage is not susceptible of definite ascertainment' or where the acts to be done or omitted 'are not measurable by any exact pecuniary standard,' and the intention of the parties 'is plain anl palpable,' and the amount stipulated in the contract as the damages to be recovered is not 'disproportionate to the probable damages,' the courts will construe it to be liquidated damages."

Tested by these rules and the principles announced by the text-writers, the sum named in the contract in question is undoubtedly liquidated damages and not a penalty. The language of the contract is not ambiguous as to the intention of the parties to make the one thousand dollars liquidated damages, and the circumstances under which it was made are not disputed; these are the controlling features in settling its interpretation. [Wilkinson v. Colley, 164 Pa. 35, 26 L. R. A. 114.]

But it does not follow because the provision in this contract is for liquidated damages and the parties have agreed upon a fixed sum in case of breach, that the jurisdiction of a court of equity is necessarily ousted. While there are some courts of last resort that hold this view, they are opposed to the general weight of authority. [Wilkinson v. Colley, supra; Harris v. Theus (Ala.), 10 L. R. A. (N. S.) 204, 43 So. 131; Ropes v. Upton, 125 Mass. 258; Diamond Match Co. v. Roeber, 106 N. Y. 473, 60 Am. Rep. 464, 13 N. E. 419; Zimmerman v. Gerzog, 13 App. Div. 210, 43 N. Y. Supp. 339; Reynolds v. Dreyer, 12 Misc. Rep. 368, 33 N. Y. Supp. 649; McCurry v. Gibson, 108 Ala. 451, 18 So. 806; Heinz v. Roberts (Iowa), 110 N. W. 1034; Sainter v. Ferguson, 1 Macn. & G. 286; Howard v. Woodward, 10 Jur. N. S. 1123; Bird v. Lake, 1 Hem. & M. 111; Up River Ice Co. v. Denler, 114 Mich. 296, 68 Am. St. Rep. 480, 72 N. W. 157; 22 Cyclopedia of Law and Procedure, 869, 870.]

Thus, reason and authority show that contracts with a stipulation like that in the present case which provide for a remedy at law, do not oust equity of its jurisdiction. The remedy at law for damages and the remedy in equity for specific performance are not exclusive of each other, but are cumulative. The determining criteria as to the ouster of equity jurisdiction comes, in its last analysis, to the intention of the parties to be gathered from the agreement itself in each particular case. As was said in the case of Diamond

Match Co. v. Roeber, supra: "It is, of course, competent for parties to a covenant to agree that a fixed sum shall be paid in case of a breach by the party in default; and that this should be the exclusive remedy. The intention in that case would be manifest that the payment of the penalty should be the price of nonperformance, and to be accepted by the covenantee in lieu of performance. [Phoenix Ins. Co. v. Continental Ins. Co., 87 N. Y. 400, 405.]" See also Ropes v. Upton and Zimmerman v. Gerzog, supra. The fact that the damages are liquidated does not of itself change the rule. It is a question of the real intention of the parties to be deduced from the whole instrument and the surrounding circumstances, and if it appear from these that the performance of the contract was intended, and not merely the payment of damages in case of its breach, the agreement will then be enforced by specific performance. In Long v. Bowring, 33 Beav. 585, which was an action in equity for the specific performance of a covenant, there being also in that agreement a clause for liquidated damages, the court said: "All that is settled by this clause is that if they (the injured parties) bring an action for damages the amount to be recovered is (the liquidated damages of) one thousand pounds, neither more nor less."

The agreement in the case at bar was that the parties of the first part (respondents) bound themselves in case of "any violation of this contract" to pay one thousand dollars. This provision does not give the respondents the right at their option, on payment of the liquidated damages of one thousand dollars, to re-enter the general retail lumber business. It is not an alternative provision giving the respondents the right, upon payment of the one thousand dollars, to avoid the provision of their contract that they will not re-enter the business, and it cannot be construed to mean that the respondents are given the right to do the acts prohibited; but the sum named is merely as

a security for the performance and observance of the terms of the agreement to refrain from engaging in the general retail lumber business at St. James. In the language of the parties themselves, the sum named is for a *violation of the contract,* and had it been the intention to give the respondents the right to pay the one thousand dollars as the equivalent for re-entering the business, it would then not have been a *violation* of the contract, but a part of it. From the language of the instrument, as well as the acts, understanding and surroundings of the parties, we conclude that the contract cannot be construed as meaning that the respondents should have the right to re-enter the general retail lumber business at St. James upon the payment of the one thousand dollars.

Upon a review of all the authorities, the rule in this class of cases most in harmony with justice and the prevailing current of decisions of courts of last resort is well stated in the following language: "If liquidated damages are provided for in case of a breach, and it appears that the intention was to give the party the alternative to perform or pay, the breach will not be enjoined. Where the contract is an absolute one, and cannot be construed as meaning that defendant shall have the right to do the prohibited acts on paying the sum named, an injunction will be granted to restrain him, whether or not the sum to be paid be regarded as liquidated damages." [22 Cyclopedia of Law and Procedure, 870.]

The appellants testified without objection at the trial that the opening up of the lumber business by respondents had very seriously affected their business; that it had cut their trade in two, and that it would be very difficult to estimate the exact damage they had suffered thereby. It appears that respondents at first operated the lumber business of J. M. Clark & Son at St. James, but afterwards purchased the same. G. W. Clark, a witness for appellants stated: "But to what

extent the business (of appellants) was injured would
be hard to say. I think I could calculate somewhere
near it; something like one-half I presume would be a
rough estimate. The sales would average about two
thousand or twenty-five hundred dollars a month while
they were in business and you might naturally suppose
with them out of the business it would be nearly double
that amount." J. W. Wills testified: "I don't think
there could be any possible means whereby we could
figure our loss arising from the opposition caused by
the defendants conducting a rival business. It would
be impossible to figure the trade we might receive in
six or twelve months from now or to figure on the pre-
vailing price of the market now and twelve months
hence, and from the fact that rises in the market make
variations, therefore it looks that it would be impos-
sible to figure out what the actual damage would be."

The evidence conclusively shows that respondents
have been guilty of a flagrant violation of their agree-
ment under circumstances that greatly aggravate their
offense. We believe under the evidence in this case and
the nature of the contract entered into between the
parties that equity alone can afford adequate relief to
appellants for the persistent violation by respondents
of their agreement and consequent damage to the ap-
pellants' business during the fifteen years they were to
refrain from the business, and that therefore equity
should enforce the performance of respondents' agree-
ment by injunction. It is therefore ordered that the
decree of the court below finding the issues for the
respondents be reversed and that appellants' bill be re-
instated. It is further ordered that an injunction be
issued in said case restraining respondents, directly or
indirectly, by person, corporation, individual or clerk
from engaging in or continuing in the general retail
lumber business in the city of St. James, Phelps county,
Missouri, for a period of fifteen years commencing on
the 28th day of May, 1906, and ending on the 28th day

of May, 1921, and that the appellants recover all costs of suit.   All concur.

### ON MOTION TO MODIFY JUDGMENT.

PER CURIAM.—The respondents having presented to this court their motion to modify the judgment herein, and it appearing that the contract between the parties provided that the respondents should not engage in the general retail lumber business in the city of St. James, Phelps county, Missouri, for a period of fifteen years commencing on the 28th day of May, 1906, and ending on the 28th day of May, 1921, *or until the appellants shall cease to conduct a general retail lumber business at St. James, Phelps County, Missouri,* it is therefore ordered that the judgment heretofore rendered be amended so as to read as follows: It is therefore ordered that the decree of the court below finding the issues for the respondents be reversed and that appellants' bill be reinstated. It is further ordered that an injunction be issued by the circuit court of Phelps county in said case restraining respondents, directly or indirectly, by person, corporation, individual or clerk from engaging in or continuing in the general retail lumber business in the city of St. James, Phelps county, Missouri, for a period of fifteen years commencing on the 28th day of May, 1906, and ending on the 28th day of May, 1921, or until the appellants shall cease to conduct a general retail lumber business at St. James, Phelps county, Missouri, and that the appellants recover all costs of suit.   All concur.